**William C. BUSH, Plaintiff-Appellant,**

v.

**William R. LUCAS, Defendant-Appellee.**

No. 77–1615.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 12, 1981.

---

6. *See discussion* of validity of the search warrant, *infra* at 573.

574

Harvey Elrod, Decatur, Ala., for plaintiff-appellant.

J. R. Brooks, U.S. Atty., Henry I. Frohsin, Asst. U.S. Atty., Birmingham, Ala., Alice Daniel, Asst. U.S. Atty., Wendy M. Keats, Barbara L. Herwig, Civ. Div., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GODBOLD, Chief Judge, and SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case is on remand from the Supreme Court for further consideration in light of *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In our prior opinion we held, first, that plaintiff's defamation claim against the director of the Marshall Space Flight Center was precluded by *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and second, that plaintiff had no cause of action for damages under the First Amendment for retaliatory demotion in view of the available remedies under the Civil Service Commission regulations. *Bush v. Lucas*, 598

F.2d 958 (5th Cir. 1979), *vacated and remanded*, 446 U.S. 914, 100 S.Ct. 1846, 64 L.Ed.2d 268 (1980). After due consideration of supplemental briefs filed by the parties, we conclude that *Carlson* does not dictate a contrary result. Summary judgment for defendant is therefore reaffirmed.

We note at the outset that our reconsideration of this case proceeds on the assumption that the Supreme Court's one-sentence order vacating and remanding *Bush* should not be read as implying that *Carlson* necessarily mandates reversal. It is our understanding in this type of remand that the Court has merely "flagged" this case as one upon which the intervening decision may have some bearing, but which the Court has not conclusively determined to be materially affected thereby.

■ The facts of the case are adequately set out in *Bush*, 598 F.2d 958, and will not be repeated here. With regard to Bush's state law defamation claim, the Court previously held that under *Barr v. Matteo* defendant Lucas was protected from liability by absolute official immunity inasmuch as the alleged defamatory statement to the press fell within his duties as director of the space center. Nothing in *Carlson* affects or casts doubt upon this holding and we therefore reinstate without change that portion of the Court's prior opinion addressing the defamation issue. *Bush*, 598 F.2d at 960.

The decision in *Carlson*, however, by detailing in what circumstances an individual's right to seek damages from federal officials for constitutional violations can be defeated, directly bears upon this Court's holding that Bush cannot seek damages from his supervisor for retaliatory demotion. In *Carlson*, the Court held the plaintiff could maintain an action for damages against federal prison officials for constitutional violations even though she also could sue the Federal Government under the Federal Tort Claims Act (FTCA). The Court stated that under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the victim of a constitutional violation by a federal agent has a right to recover damages against the agent in federal court, which right can be defeated in a particular case in only two situations:

> The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." [*Bivens*,] 403 U.S., at 396 [91 S.Ct. at 2004]; *Davis v. Passman*, 442 U.S. 228, 245 [99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective. *Bivens, supra*, at 397 [91 S.Ct. at 2005]; *Davis v. Passman*, 442 U.S., at 245–247 [99 S.Ct. at 2276–78].

*Carlson*, 446 U.S. at 18–19, 100 S.Ct. at 1471–72.

Neither situation was found to be present in *Carlson*. There were no special factors counseling hesitation, and not only did the Court find no explicit congressional declaration that persons injured by federal officers' Eighth Amendment violations could not recover damages from them, but it in fact found in the legislative history of the 1974 FTCA amendments evidence that Congress intended the FTCA to complement rather than to replace the *Bivens* remedy. *Id.* at 19–20, 100 S.Ct. at 1472. Four additional factors, each suggesting the *Bivens* remedy was more effective than the FTCA remedy, buttressed the Court's conclusion that the FTCA was not intended to preempt the *Bivens* remedy. *Id.* at 20–23, 100 S.Ct. at 1472–1474.

■ Applying *Carlson* to this case, Bush is entitled to seek a constitutional damage remedy for retaliatory demotion unless the defendant can demonstrate either that special factors are present which counsel hesitation in the absence of affirmative action by Congress, or that Congress has provided an alternative remedy which it intended as a substitute for, and considered equally effective as, a *Bivens* remedy. Since we find special factors counseling hesitation, we need not consider the alternative remedy question.

There is little guidance in the Supreme Court opinions as to what "special factors" will justify withholding a *Bivens* remedy. The Court found no special factors present in either *Bivens*, 403 U.S. at 396–397, 91 S.Ct. at 2004–05, or *Carlson*, 446 U.S. at 19, 100 S.Ct. at 1472, and any concerns created in *Davis v. Passman* by defendant's status as a congressman were held to be coextensive with the protections afforded him by the Speech and Debate Clause, 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979).

█ Defendant persuasively argues, however, that in this case the unique relationship between the Federal Government and its civil service employees is a special consideration which counsels hesitation in inferring a *Bivens* remedy in the absence of affirmative congressional action. The role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally. This distinction has been recognized in numerous Supreme Court cases. In *Sampson v. Murray*, 415 U.S. 61, 83, 94 S.Ct. 937, 949, 39 L.Ed.2d 166 (1974), a case involving the dismissal of a probationary civil servant, the Court noted the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" The governmental employer-employee relationship was a significant factor in *Arnett v. Kennedy*, 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974), which held a civil service employee had no due process right to a pre-termination evidentiary hearing. Justice Powell, concurring in *Arnett*, emphasized "the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." *Id.* at 168, 94 S.Ct. at 1651. Specifically regarding the exercise of First Amendment rights by public employees, the Court has said,

> it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

This special relationship affects not only the substantive rights of public employees, but also the way in which an aggrieved employee can assert and redress his rights in the employment context. Consistent with the notion that the Government should have wide latitude and control over its employees, Congress, rather than the courts, has traditionally carried the burden of regulating the Government employer-employee relationship. Beginning with the enactment of the Pendleton Act of 1883 and through the Lloyd-La Follette Act of 1912 and the Back Pay Acts of 1948 and 1966, Congress has sought to achieve a proper balance between promoting governmental efficiency and protecting the rights of employees aggrieved by improper personnel action. This process of fine tuning has continued with the enactment of the Civil Service Reform Act of 1978 and has been supplemented by detailed administrative regulations.

As outlined in our prior opinion, *Bush*, 598 F.2d at 961, when Bush was demoted in 1975 he was protected by specific notice and review procedures and was entitled to retroactive back pay in the event his administrative appeal was successful. He could seek review of an adverse decision of the Civil Service Commission in federal court. Bush in fact pursued these remedies and was eventually reinstated with back pay by the Commission's Appeals Review Board.

We stress the remedies made available by Congress to an aggrieved civil servant in order to emphasize the care Congress has taken to carefully balance the employee's rights as a citizen with the Government's interest in the efficient conduct of the na-

tion's business. The very comprehensiveness of the legislative and administrative scheme evinces Congress' awareness of the special relationship and of the Government's responsibilities toward its civil service employees.

The employer-employee context of this case serves to distinguish it from suits such as *Bivens* and *Carlson* which involved plaintiffs as private citizens seeking damages against agents of the Government acting in its sovereign capacity. Inferring a *Bivens* remedy in this case would tend to interfere with and undermine the traditional control of the Government over its internal and personnel affairs. It might encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established. Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights.

These concerns have also been expressed by the Eighth Circuit in *Bishop v. Tice*, 622 F.2d 349 (8th Cir. 1980). There, the plaintiff alleged that three federal employees coerced him into abandoning his job as a federal safety engineer by threatening to lodge criminal charges against him. With regard to Bishop's substantive due process claim, the court held the existence of civil service remedies, coupled with the fact that a parallel *Bivens* remedy would encourage federal employees to bypass these procedures, constituted a special factor counseling hesitation in creating a constitutionally based remedy for wrongful dismissal. *Id.* at 357. The court noted it had examined *Carlson v. Green* and found its decision in *Bishop* consistent therewith. *Id.* at 357 n. 16.

While the result in this case might be different if failure to recognize a *Bivens* remedy would leave Bush, as the congressional employee in *Davis v. Passman*, without any remedy, this of course is not the case. We therefore find, consistent with

*Carlson v. Green*, that the Government employer-employee relationship present in this case is a special factor which counsels hesitation in recognizing a constitutional cause of action in the absence of affirmative action by Congress. In light of this holding, we do not and need not under *Carlson* reach the question of whether Congress intended the civil service remedies to be an equally effective substitute for a *Bivens* remedy. We hold only that absent more explicit direction from Congress, a *Bivens* remedy should not be inferred.

AFFIRMED.