Gennie WEISS, Plaintiff,

v.

John O. MARSH, Etc., et al., Defendants.

Civ. A. No. 81–65–S.

United States District Court, M. D. Alabama, S. D.

Oct. 20, 1981.

On Motion for Reconsideration Jan. 22, 1982.

Charles M. Crook, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for plaintiff.

Maj. Richard W. Wright, Falls Church, Va., for all defendants except Crenshaw, individually.

Charles Price, Montgomery, Ala., for Milton Crenshaw, individually.

## OPINION

VARNER, Chief Judge.

This cause is now before the Court on Defendants' motion for summary judgment filed herein August 31, 1981.

LAW. The standard to be applied in considering a motion for summary judgment is contained in Federal Rule of Civil Procedure 56(c):

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

From the text of the rule, it is clear that "[i]n order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Furthermore, it appears that "[a] fact is material if it constitutes a legal defense to an action." *Kennett-Murray*, supra, citing C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 2725, p. 506 (1973). "The party seeking summary judgment has the burden of demonstrating that there exists no genuine issue as to any material fact, (citations omitted)." *United States v. An Article of Food, etc.*, 622 F.2d 768, 771 (5th Cir. 1980). "In reviewing the pleadings, depositions, answers to interrogatories, admissions, and affidavits to determine whether a genuine

issue of material fact exists, a court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment, (citations omitted)." *An Article of Food*, supra, at 771.

■ EXCLUSIVITY OF 42 U.S.C. 2000E–16. Defendants' first ground for summary judgment is based on their contention that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, provides the exclusive remedy for Plaintiff's complaints of discrimination. The United States Supreme Court held in *Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), that "§ 717 of the Civil Rights Act of 1964, as amended [42 U.S.C. § 2000e–16] provides the exclusive remedy for claims of discrimination in federal employment."

As against these Defendants in their official capacities, the exclusive remedy for employment discrimination in this case is 42 U.S.C. § 2000e–16. In addition, it appears that under § 2000e–16(c) the only proper Defendant is the Secretary of the Army in his official capacity. *Newbold v. United States Postal Service*, 614 F.2d 46 (5th Cir. 1980).

Plaintiff also states causes of action for employment discrimination under 42 U.S.C. §§ 1981, 1983, 1985 and 42 U.S.C. §§ 2000e, *et seq.*, (other than under § 2000e–16), against the Defendants Marsh, Crenshaw and Daniels in their individual capacities. In *Newbold*, supra, the United States Court of Appeals for the Fifth Circuit held that the language of the Supreme Court in *Brown*, supra, was sufficiently broad to make a 42 U.S.C. § 2000e–16 action against the head of a department the exclusive remedy for discrimination in federal employment. The Court in so holding precluded even actions against individuals which were brought to redress federal employment discrimination.

As for the tort cause of action alleged by the Plaintiff, this Court is of the opinion that it cannot be said that no state of facts could be alleged so as to state such cause of action, even in the face of the exclusivity of 42 U.S.C. § 2000e–16.

■ In addition to the charges of discrimination in employment, Plaintiff alleges a violation of the Equal Pay Act, 29 U.S.C. § 206(d). Defendants argue that such an action may not be maintained since *Brown*, supra, precludes all actions for federal employment discrimination other than one brought under 42 U.S.C. § 2000e–16. While the term "discrimination" obviously can include discrimination in pay, it does not appear that 42 U.S.C. § 2000e–16 was intended by Congress to preempt an action for violation of the Equal Pay Act, even though it does preempt other claims alleging employment discrimination against a federal agency. That 42 U.S.C. § 2000e–16 —as interpreted by *Brown*, supra—does not preempt an Equal Pay Act action appears from the circumstances of congressional consideration of amendments to § 717 of the Civil Rights Act of 1964 and of amendments to § 3 of the Fair Labor Standards Act of 1938.

The United States Supreme Court in *Brown*, supra, made it clear that the preemption effect of 42 U.S.C. § 2000e–16 on other actions for federal employment discrimination resulted from congressional action on the 1972 amendments to the Civil Rights Act of 1964. However, in 1974 Congress amended the Fair Labor Standards Act of 1938 by making it applicable to federal government employees. See, Public Law 93–259, 1974 U.S.Code Cong. and Adm. News, pp. 2811, 2812 (hereinafter "Adm. News"). This amendment redefined the term "employer", as contained in 29 U.S.C. § 203(d), to include public agencies which are defined in 29 U.S.C. § 203(x) to include the Government and agencies of the United States. See, Adm.News, p. 2821. The effect of this amendment is to make 29 U.S.C. § 206(d), regarding sex discrimination in the payment of wages, applicable to the federal government. Under 29 U.S.C. § 216(b), an employee may maintain an action for a violation of § 206(d).

Obviously, it is not logical to argue that the 1972 action on amendments to the Civil Rights Act of 1964 could have had a preemptive effect on 1974 actions which creat-

ed a remedy against the federal government for sex-based wage discrimination. While the 1972 action on the Civil Rights Act of 1964 might have preempted other actions for employment discrimination which existed at that time, this subsequent action must be held to, at a minimum, evidence a congressional change of intent as to the preemptive effect of 42 U.S.C. § 2000e–16. Accordingly, Plaintiff may maintain an action for the violation of the Equal Pay Act.

■ EQUAL PAY ACT DEFENDANTS. Defendants also argue that the Secretary of the Army is the only proper Defendant under the Equal Pay Act. While, logically, this would appear to be true, the Act's definition of "employer", 29 U.S.C. § 203(d), which states that an employer is:

"Any person acting directly or indirectly in the interest of an employer in relation to an employee * * *",

may require a different result. Defendants admit that the Department of the Army is an employer. It would appear, therefore, that Defendants Marsh, Crenshaw and Daniels might qualify as persons acting directly or indirectly in the interest of the Department of the Army in relation to Plaintiff. Consequently, since "person" is defined in § 203(a) to include an individual, a 29 U.S.C. § 216(b) action would appear to be maintainable against the individual Defendants as employers. While this result may seem unusual, it appears to be mandated by the statutory language, and Defendants have not cited any case law or legislative history to this Court which would require a different ruling. Based on the foregoing, a ruling granting summary judgment on this question—whether the Secretary of the Army is the only proper Defendant under the Equal Pay Act—would be premature.

PERSONAL JURISDICTION OVER DEFENDANT MARSH. Defendants argue that this Court lacks personal jurisdiction over the Secretary of the Army, Mr. Marsh, in his individual capacity. This contention is based on Defendants' assertion that Mr. Marsh does not have sufficient contacts with the State of Alabama to meet the constitutional standards promulgated by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Insofar as this action is one for federal employment discrimination, as stated earlier, *Brown*, supra, and *Newbold*, supra, have disallowed all actions alleged against individuals, except that action under 42 U.S.C. § 2000e–16. Accordingly, the minimum-contacts argument is irrelevant as regards those actions.

■ There remains, however, Plaintiff's action under the Equal Pay Act. Defendants base their argument regarding Mr. Marsh's minimum contacts on *Thames v. Gunter-Dunn, Inc.*, 373 So.2d 640 (Ala.1974). However, assuming that this is a State law question, the argument—that jurisdiction over individuals or employees of the government may not be predicated upon jurisdiction over the government itself—is not without exception. See, *Thames*, supra, at 641. If it can be shown that the individual employees of the government acted outside the "scope of their employment" or "ultra vires their authority" with the government, then it is possible that jurisdiction might exist. See, *Penn v. Schlesinger*, 490 F.2d 700, 705 (5th Cir. 1973), citing *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Cf., *Donner v. Tams-Witmark Music Library*, 480 F.Supp. 1229 (E.D.Pa. 1979). Also, since the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, might, in view of the government's special authority and control over its employees, be interpreted to allow a suit against an individual government employee, the individual's contacts with the State may well be those made through government service. See, *Bush v. Lucas*, 647 F.2d 573 (5th Cir. 1981); *Donner v. Tams-Witmark*, supra, at 1230. In such a Fair Labor Standards or Equal Pay Act case, if, under federal law the individual employee is not shielded by immunity from individual liability, then it would be illogical as a federal matter to "permit a [government] officer to shield himself from jurisdiction by means of a [government] entity, when [as a result of an

act of Congress] he could not interpose the same shield as a defense against substantive liability." *Donner*, supra, at 1234. Here again, Defendants have not addressed this latter argument, and it is clear that there are exceptions to the State law rule cited in *Thames*, supra. Therefore, a ruling granting summary judgment on the question of personal jurisdiction over Mr. Marsh in his individual capacity would be premature.

■ Defendants have also raised a question concerning the sufficiency of service of process on Mr. Marsh in his individual capacity. Since the relevant Federal Rule of Civil Procedure, 4(e), requires a reference to State law for resolution of this question, the appropriate State rule is Alabama Supreme Court Rule 4.2(b)(1)(A). That rule requires service, in circumstances such as these, to be made by certified mail, restricted delivery. Such restricted delivery was not made here; therefore, service of process on Mr. Marsh was insufficient and summary judgment must be granted dismissing the entire cause of action against him in his individual capacity, unless proper service be had within 60 days.

In addition, Defendants assert that the individual Defendants are immune from the suit filed by the Plaintiff. As for the actions brought against these Defendants in their individual capacities under 42 U.S.C. §§ 2000e et seq. (other than under § 2000e–16), 1981, 1983 and 1985, the previous discussion concerning the exclusivity of the 42 U.S.C. § 2000e–16 remedy is again relevant and makes consideration of immunity in the context of these actions unnecessary since these actions cannot be maintained.

■ Turning to the tort action raised by Plaintiff, Defendants contend that Defendants Crenshaw and Daniels are absolutely immune from such suits. Defendants cite *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1958), for this proposition. However, *Barr* makes it clear that, for a government employee to qualify for this immunity, there must be a "relation of the act complained of to 'matters committed by law to his control or supervision'." *Barr*, supra, at 573, 79 S.Ct. at 1340, citing *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1895). Clearly, there remain questions as to whether the acts of these Defendants comport with the standard set out in *Barr*. Therefore, summary judgment on the question of Crenshaw's and Daniels' immunity from tort cannot be granted. Also, Defendants have not cited this Court to any authority for the proposition that a federal employment relationship does not constitute a contractual relationship.

■ Without considering the question of immunity in regard to inferred constitutional actions, Plaintiff's equal protection action must, nevertheless, fail. To the extent that Plaintiff's equal protection claim arises under the Fourteenth Amendment, the allegation is meritless since that Amendment, by its terms, does not apply to federal officials. To the extent that Plaintiff's equal protection claim arises under the Fifth Amendment, that action must fail. Under *Bush v. Lucas*, supra, and *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), this set of circumstances is not one in which a constitutional action should be inferred. Since this case arises in a federal employment discrimination context, these equal protection claims are clearly asserted to redress that discrimination. Under *Carlson*, supra, it is clear that Congress has provided an alternate remedy to redress federal employment discrimination. Therefore, a Fifth Amendment constitutional cause of action should not be allowed here. Also, under *Bush*, supra, it is clear that the federal employment relationship which exists here is one special circumstance which indicates that a Fifth Amendment cause of action should not be inferred.

CONCLUSION. Defendants' motion for summary judgment will be granted in the following respects:

A. Defendants' motion will be granted to the extent that actions under 42 U.S.C. §§ 2000e, 1981, 1983 and 1985 against all Defendants in their official and individual capacities will be barred, except as to the

§ 2000e–16 action against the Secretary of the Army, Mr. Marsh, in his official capacity.

B. Defendants' motion will be granted, inasmuch as there has been an insufficient service of process on Mr. Marsh in his individual capacity, unless sufficient service of process is made within 60 days from the date of this Opinion and the Order entered in accordance herewith.

C. Defendants' motion will be granted as to actions arising under the Fifth and Fourteenth Amendments to the United States Constitution.

An Order will be entered in accordance with this Opinion.

### On Motion For Reconsideration

This cause is now before the Court on Defendants' motion for reconsideration filed herein November 17, 1981. Defendants request this Court to hold (1) that government employees in their individual capacities are not proper Defendants under the Equal Pay Act (hereinafter the Act), 29 U.S.C. § 206(d) and (2) that the Secretary of the Army, in his official capacity, is the only proper Defendant under the Act. In this Court's October 20, 1981, Opinion, the Court held that, as a result of the definitional provision in 29 U.S.C. § 203(a) and (d), the individual Defendants could be subject to suit for alleged violations of the Act.

### CONCLUSIONS OF LAW

I. PLAIN MEANING. In evaluating the merits of Defendants' arguments concerning this question of the meaning and effect of statutory terms, this Court has referred to what is commonly called the "plain meaning rule" of statutory analysis. No better statement of this rule has been drafted than that which the Fourth Circuit Court of Appeals approved in *In re Boggs-Rice Co.*, 66 F.2d 855, 858 (4th Cir. 1933):

> " 'Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not

permitted to search for its meaning beyond the statute itself. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the Act would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless'." 66 F.2d at 858. *Accord, Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916); *Oklahoma v. Schweiker*, 655 F.2d 401, 416 (D.C.Cir.1981); *KCMC, Inc. v. F.C.C.*, 600 F.2d 546, 549 (5th Cir. 1979).

This Court will not approve the emasculation of statutes by seeking explanation of terms from other less authoritative sources than the language itself. If Congress desires to alter the "plain meaning" of the definitional provisions under consideration here, it certainly can. This Court will not, however, usurp what, to this Court, is clearly a task of the legislative branch. Accordingly, this Court declines to reconsider its earlier ruling.

II. DEFENDANTS' CONTENTIONS. Though the meaning to be ascribed to the terms of the Act is clear, even if this Court sought the sort of guidance provided by the Defendants, the Court's decision would not be altered. What follows at this point is a brief synopsis of the arguments proffered by Defendants, together with this Court's analysis which demonstrates that these arguments are ineffectual.

A. *Pre-1974 Status of Statute.* Defendants argue that, prior to the 1974 amendments to the definitional provisions, 29 U.S.C. § 203(d)[1] did not make the United States or any of its agencies an "employer" within the terms of the Act and that, therefore, the term "employer" does not apply to government employees. Defendants argue that no "person" (i.e., government employee) could be held to act for the government under the terms of the provision then in effect so as to come within the definition of

---

1. That section now reads: "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency. * * *."

employer. Defendants' position is that the 1974 amendments to 29 U.S.C. § 203(d) only added the United States to the list of covered employers and did not bring employees of the United States within the definition of employer so that they could be sued.

If construction were appropriate, the provisions must be construed in the light of each other as they now are—not as one of them may once have been. There is a substantial well-reasoned line of decisions interpreting these sections with regard to corporations. See, *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278, 282 (D.R.I. 1980); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 296 (N.D.N.Y.1978); *Goldberg v. Saf-T-Clean, Inc.*, 209 F.Supp. 343, 345 (S.D.Fla.1962). They recognize what the "plain meaning" of "employer" is.

All of these cases held that corporate employees can be sued as employers under the Act. If Congress desired to treat employees of the United States any different from corporate employees, it would have been simple enough to state so specifically. In fact, the existence in another statute of a provision which limits who can be sued in federal employment discrimination cases demonstrates that Congress knew how to achieve such objectives if they so desired. See, 42 U.S.C. § 2000e–16(c). That provision was enacted only two years prior to the 1974 amendments under consideration here.

B.  *Civil Service Commission.*  Under 29 U.S.C. § 204, the Civil Service Commission (hereinafter the Commission) is given authority to "administer the provisions of * * [the Act] with respect to any individual employed by the United States * * *." Defendants argue that, since 5 U.S.C. §§ 1101, *et seq.*, and 5 U.S.C. §§ 1301, *et seq.*, limit the jurisdiction of the Commission to public agencies only, this is an indication that Congress intended only agencies to be employers under the Act. This Court cannot accept such an argument since, in the sentence directly following that relied on by Defendants, the statute says:

"Nothing in this subsection shall be construed to affect the right of an employee to bring an action * * * under section 216(b) of this title." See, 29 U.S.C. § 204(f).

Obviously, Congress did not intend for the Commission's jurisdiction to affect an employee's action under § 216(b). This Court construes the last sentence of subsection (f) to mean that general administration concerns and an employee's litigation concerns were to be viewed separately. Assuming that is true, that section cannot be viewed as any limitation on the litigation rights created by the "plain meaning" of 29 U.S.C. §§ 203(d) and 216(b).

Furthermore, any effect that section's [29 U.S.C. § 204(f)] vesting of jurisdiction in the Commission might have on the definition of employers is diminished by the fact that the Commission's functions with regard to Equal Pay Act Administration were transferred to the Equal Employment Opportunity Commission (hereinafter EEOC). See, § 1 of 1978 Reorg. Plan No. 1, 42 F.R. 19087, 92 Stat. 3781, set out in the Appendix to Title 5, Government Organization and Employees. The jurisdiction of the EEOC is not, as is that of the Civil Service Commission, limited to agencies. It would appear, then, that vesting of administration authority in the EEOC cannot be an indication of any limit on the right of an employee to sue individuals employed by the United States.

C.  *Senator Williams' Remarks.*  Defendants contend that Senator Williams' remarks during the debate on the 1974 amendments were to the effect that the "1974 amendments would bring the employees of the United States under the Fair Labor Standards Act (hereinafter FLSA) [of which the Equal Pay Act is a part] in the same manner that government employees were brought under the Civil Rights Act." See, p. 3 of Defendants' Memorandum in Support of the Motion to Reconsider filed herein November 17, 1981. Defendants argue that the portion of the Civil Rights Act to which Senator Williams referred is 42 U.S.C. § 2000e–16 which limits who may be sued for discrimination in federal employment. Under that section, a federal employee can sue only the head of

the department. Defendants' reason that, if Congress intended to limit rights of federal employees proceeding under the FLSA "in the same manner" as federal employees proceeding under 42 U.S.C. § 2000e, Title VII, then the defendants who may be sued under the FLSA must be the same as the defendants who may be sued by federal employees under Title VII, i.e., only the department head and not individuals.

There is no indication, however, in this remark that Senator Williams attempted to deal with the specific provisions of the FLSA concerning defendants who could be sued under the Act. His remark appears to be very general in nature. Any analogy in this case to a Title VII federal employment discrimination case is facile at best since 42 U.S.C. § 2000e–16(c) has a provision which directly limits who may be sued under that Act. There is no such provision in the Equal Pay Act.

D. *Carter v. Marshall.* Defendants quote the case of *Carter v. Marshall,* 457 F.Supp. 38, 40 (D.D.C.1978), as follows:

"Thus it appears that the Secretary and other officials of the Labor Department are appropriate defendants as to the Equal Pay Act claims and that the Court can order appropriate relief against them in their *official capacity.*" [emphasis added]

Defendants argue that the D. C. Court limited the status under which relief may be received from the defendant government officials. The first of several problems with this decision is that the Court did not cite any authority in support of its statement. Second, it is not clear whether these officials were sued, to begin with, in any capacity other than their official capacity, thus making that statement merely gratuitous. Finally, it is not clear that a decision concerning the capacity in which the defendants could be sued was necessary. The issue before the Court appears to have been merely whether those defendants were, under any circumstances, proper defendants and not, specifically, whether the defendants were proper defendants in their individual capacities. If this last condition was true, then the Court's statement regarding "official capacity" was mere dicta.

E. *Complete Relief.* Title 29, U.S.C. § 216(b) establishes the measure of relief to which an employee is entitled for a violation of the Equal Pay Act. Defendants argue that this relief can be recovered from the Department of the Army or the Secretary in his official capacity and that, consequently, no harm could result to Plaintiff from limiting Defendants who may be sued under the Act. Here again, it must be said that this Court will not alter the intent of Congress based on some equitable argument concerning the lack of harm to the Plaintiff from such a tortured construction of the statute. In addition, it may be that certain defenses of the Secretary could prevail against Plaintiff but that these same defenses, when asserted on behalf of individuals, would not prevail. Thus, leaving these individual Defendants in the case could secure some relief for Plaintiff while taking them out might totally negate the Plaintiff's chances to recover. This Court will not dismiss the individual Defendants based on what is, at a minimum, a speculative argument concerning the lack of harm, in terms of relief, which would result to Plaintiff.

F. *Serious Ramifications.* Defendants state that, given the fact that thousands of employees might be enabled to sue an individual if the statute is construed to allow suit against government employees as individuals, Congress could not have intended such a result. Furthermore, Defendants argue that such liability could be a deterrent against individuals seeking high government offices. Of course, here again, the analogy of the liability of corporate officials which could result from this Act adequately answers that argument. The Secretary of the Army or other government officials would probably not be subject to any more substantial liability than would corporate officials, say, for example, of Exxon or A. T. & T. See, *Marchak v. Observer Publications, Inc.,* supra, at 282; *Marshall v. Sam Dell's Dodge Corp.,* supra, at 296; *Goldberg v. Saf-T-Clean,* supra, at 345.

## CONCLUSION

It would not be appropriate to conclude this opinion without raising a possible congressional rationale for drafting the statute as it now appears. As envisioned by this Court, such a rationale clearly supports this Court's view of the statute. This hypothetical reasoning by Congress could be as follows: If this statute were to be construed as Defendants argue, there is no question that all relief recovered by the Plaintiff would come from government coffers. Obviously, discrimination of the sort alleged to have been perpetrated here is carried out or established at some point by individual persons. If the government absorbs all damages that result from such discrimination, the deterrent to the individual violator would be minimal. Accordingly, Congress clearly could have intended to make government employees as individuals subject to liability in order to deter recurring acts of discrimination in pay.

Based on the foregoing, this Court will deny Defendants' motion to reconsider.

An Order will be entered in accordance with this Opinion.