Linda H. BROADWAY,
Plaintiff-Appellant,

v.

John R. BLOCK, Secretary of Agriculture, et al., Defendants-Appellees.

No. 81–3788.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1982.

Hunter & Scott, Louis G. Scott, Monroe, La., for plaintiff-appellant.

Claude W. Bookter, Jr., D.H. Perkins, Jr., Asst. U.S. Attys., Shreveport, La., Freddi Lipstein, Dept. of Justice, Civil Division, Appellate Staff, William Kanter, Washington, D.C., for defendants-appellees.

Before GARZA, REAVLEY and GAR-WOOD, Circuit Judges.

REAVLEY, Circuit Judge:

Linda Broadway was hired by the Farmer's Home Administration ("FmHA") in 1976. In October of 1980 she received a letter from the Administrative Officer for the FmHA stating that she was being reassigned from her position as County Office Assistant to the position of County Office Clerk. The reassignment did not involve a change in grade or pay, for Ms. Broadway at all times retained her classification as a GS-4 clerk typist.

Without exhausting any administrative remedies, she brought suit in federal district court against the FmHA, the Department of Agriculture and various federal officials, requesting reinstatement of her former position and damages of $15,000.[1]

1. In choosing to sue for $15,000, the plaintiff may have deprived the district court of subject matter jurisdiction. Suits against the United States, "not sounding in tort," and seeking

She claimed that her new position had fewer supervisory functions and benefits than her old one, and that the reassignment cast a stigma of incompetency upon her and caused her embarrassment and mental anguish. The complaint alleges that she was not informed of any rights to a grievance procedure or appeal, that she was not given a hearing before the action was taken, and that she was deprived of an opportunity to apply for her old position because the FmHA failed to post the availability of the position when an opening arose. She asserted a right of relief under 42 U.S.C. § 1983, under the due process and equal protection clauses of the Constitution, and under provisions of the Administrative Procedure Act and the Civil Service Reform Act.

The defendants filed a motion to dismiss the case on several grounds, including failure to state a claim upon which relief can be granted. In November of 1981, the district judge signed a "Ruling on Motion to Dismiss and/or for Summary Judgment," dismissing the case with prejudice. On August 12, 1981, the court gave notice that it would decide the motion to dismiss on the basis of the record. On October 20, 1981 the court held a hearing on the motion. We therefore treat the court's ruling as a ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 12(b), 56(c). We affirm.

We have examined each possible basis for judicial relief raised by the pleadings and record, the briefs, and our own research, and find that under no set of facts has the plaintiff asserted claims cognizable in federal district court. The reassignment complained of here is not a matter for judicial oversight.

---

damages greater than $10,000 must be brought in the Court of Claims. 28 U.S.C. § 1491; *Jones v. Alexander,* 609 F.2d 778, 780 (5th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). Unless this suit is viewed as one involving a "constitutional tort"—a notion we reject below—jurisdiction lies exclusively in the Court of Claims at least insofar as the plaintiff is seeking recovery from the federal treasury. The Court of Claims also has jurisdiction to order restoration of office or position "incident of and collateral to" any money judgment it renders. 28 U.S.C. § 1491. Employ-

## I. *42 U.S.C. § 1983*

■ The complaint states that "jurisdiction" is conferred "by 42 U.S.C. Section 1983 relating to deprivation of rights under color of law." In fact, as expansive as that statute is, it only covers deprivations of rights under color of *state* law. *Ellis v. Blum,* 643 F.2d 68, 83 (2d Cir.1981). Broadway is a federal employee who was reassigned by her supervisors in the civil service system. The individual defendants in this suit are federal officials, acting under color of federal law rather than state law, and are not subject to suit under § 1983. *Seibert v. Baptist,* 594 F.2d 423, 429 (5th Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Mack v. Alexander,* 575 F.2d 488, 489 (5th Cir.1978).

## II. *The Civil Service Reform Act*

The Civil Service Reform Act of 1978 ("CSRA") is the principal statute governing federal civil service practices. We reluctantly explore its baroque provisions, scattered through Title V of the United States Code, in search of a cause of action.

■ The CSRA expressly provides for judicial review of certain personnel decisions. 5 U.S.C. § 7703 states that "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." Broadway has no right to judicial review under this section, which provides for review by a circuit court or the Court of Claims of decisions by the Merit Systems Protection Board ("MSPB"), an administrative tribunal empowered to

---

ment disputes with the federal government have been found to constitute matters for the Court of Claims. *Jones v. Alexander, supra* (holding employment dispute subject to review in district court only because complaint was amended to waive any request for relief in excess of $10,000); Wright, Miller & Cooper, Federal Practice and Procedure § 4101 at 211 (1978). Although a court should ordinarily address its jurisdiction before deciding whether a cause of action exists, we prefer to discuss the appellant's contentions.

hear certain complaints by federal employees. In our case there was no appeal through the MSPB to the circuit court or Court of Claims; instead suit was brought in federal district court. Moreover, the reassignment of which the plaintiff complains is not subject to review by the MSPB in the first instance. Only certain "adverse actions"[2] can be taken to the MSPB. These actions include removals, suspensions for more than 14 days, reductions in pay or grade, and furloughs of 30 days or less. 5 U.S.C. §§ 7512, 7513(d), 4303(e). Reassignments with grade and pay retention are not included as adverse actions subject to review by the MSPB,[3] and on appeal by the federal judiciary.

■ The CSRA does not ignore reassignments, however. 5 U.S.C. § 2302 prohibits the federal government as an employer from taking "personnel action" which constitutes a "prohibited personnel practice." Personnel action under this provision includes appointments, promotions, transfers, reassignments and other expressly enumerated actions. *Id.* § 2302(a)(2)(A). The Special Counsel of the MSPB is authorized and required to investigate any allegation of prohibited personnel practices, and may request the MSPB to consider and order corrective action on the matter. 5 U.S.C. § 1206(a)–(c). He is also required to investigate any allegation concerning "activities prohibited by any civil service law, rule, or regulation . . . ." *Id.* § 1206(e)(1)(D). However, there are no statutory provisions for judicial oversight of the Special Counsel's efforts,[4] and Ms. Broadway chose not to pursue this administrative remedy.

■ The CSRA also authorizes the Office of Personnel Management ("OPM") to prescribe regulations for the administration of the competitive civil service. 5 U.S.C. § 1302. Pursuant to this and other authority, the OPM requires each agency to establish a grievance system that meets certain specified requirements. 5 C.F.R. § 771. The Department of Agriculture has published its grievance procedures in its Employee Handbook. Counsel for Ms. Broadway asserted in his brief and at oral argument that the grievance procedure has broken down or exists only on paper, an argument that is difficult to accept given that no evidence exists in the record that Broadway ever attempted to pursue this administrative remedy. The CSRA does not expressly authorize judicial oversight of these agency grievance systems. Furthermore, the regulation mandating the establishment of the systems states:

> The Office of Personnel Management shall review from time to time each agency administrative grievance system developed under this part to determine whether the administrative grievance system meets the requirements of this part. The Office shall require corrective action to bring a system which fails to meet the requirements into conformity. The Office does not act on a request by an employee to review the processing of, or the decision on, an individual grievance.

---

2. The term "adverse action" no longer appears in the wording of the civil service statutes, but Chapter 75 of Title V, containing provisions which describe those actions subject to review by the MSPB and the federal courts, is titled "Adverse Actions."

3. Ms. Broadway sought independent review of her case before the MSPB concurrently with her suit in federal court. The Dallas Field Office held that reassignments with grade and pay retention, and matters pertaining to announcements of vacancies are not appealable adverse actions. The decision is designated No. DA07528110070 (Feb. 27, 1981). A petition for review by the MSPB was denied on July 2, 1981.

4. Under 5 U.S.C. § 1206(c)(1), the Special Counsel can recommend that corrective action be taken by the MSPB. *Frazier v. Merit Systems Protection Board*, 672 F.2d 150 (D.C.Cir. 1982) holds that an order by the MSPB in response to a request for corrective action by the Special Counsel concerning the reassignment of several Deputy U.S. Marshals is subject to judicial review by a circuit court under 5 U.S.C. § 7703. Hence, the District of Columbia Circuit has held that reassignments are subject to judicial review if a complaint is first made to the Special Counsel and he chooses to petition the MSPB for corrective action. Without endorsing *Frazier*, we find it easily distinguishable from this case, where suit was lodged directly in district court.

5 C.F.R. § 771.304. Given that the agency mandating the grievance system does not even contemplate administrative review of individual complaints about the processing of grievances, judicial review seems wholly inappropriate.

■ The only source of federal district court review for a federal employee under the CSRA is 5 U.S.C. § 7703(b)(2), which provides that cases of discrimination subject to the provisions of 5 U.S.C. § 7702 shall be filed under the judicial review provisions of Title VII, the Age Discrimination in Employment Act or the Equal Pay Act, as applicable. Sections 7702 and 7703(b)(2) are designed to allocate review of discrimination claims among the MSPB, the Equal Employment Opportunity Commission and the federal courts. Without attempting to unravel the mysteries of these provisions, we are certain that they do not apply to this case. Nowhere in the pleadings or other documents presented to the district court is there an allegation of discrimination on the basis of age, sex, or race,[5] and at oral argument counsel for Broadway insisted that the suit was not based on any claim of discrimination.[6]

■ Given that no express statutory provisions under the CSRA grant the reassigned federal employee a district court cause of action absent a claim of discrimination, the question remains whether an implied cause of action exists under the Act. To answer this question our primary task is to determine whether Congress intended to create any such remedy. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

■ Fortunately, we are not required to write on a clean slate in examining what Congress intended when it restructured the civil service system. Recently, the District of Columbia Circuit addressed whether an implied cause of action existed under the CSRA for prohibited personnel practices. The plaintiff sued in district court, charging that she was discharged by the International Communications Agency in reprisal for her "whistleblowing" on official violations of law, waste and abuse of authority. Her claim was based on 5 U.S.C. § 2302(b)(8)(A), which lists as a prohibited personnel practice the taking of personnel

---

**5.** On December 1, 1980 Broadway amended her petition before the MSPB alleging discrimination in that a white person with less experience and qualifications was given the job once held by Broadway, who is black. However, the record of the proceedings before the MSPB became available to the Fifth Circuit through a motion to supplement the record on appeal. The record available to the trial court in this case indicates no allegations of racial discrimination, and Broadway has never claimed discrimination as a basis for her suit in federal court.

**6.** THE COURT:
What is her substantive complaint? That is to say, does she say she was really doing her job well and they were just mistaken, or does she complain of some racial or sexual discrimination?
COUNSEL:
In the complaint there was no complaint of racial or sexual discrimination, because the position had not been filled and it was not (interruption)
THE COURT:
That doesn't require (pause) you can't transfer somebody from a position on the grounds of race or sex and defend it on the grounds that you haven't filled it.
COUNSEL:
But (pause) eventually the position was filled with a white person who had less experience and was less qualified than Ms. Broadway (interruption)
THE COURT:
So there was a racial complaint?
COUNSEL:
But there was no (pause) in our complaint that is not alleged. We're saying that we have a cause of action even without (interruption)
THE COURT:
But that's really her complaint is racial discrimination?
COUNSEL:
No, your honor. Her complaint is that she was doing her job and she was arbitrarily demoted without any justification or a valid reason.
We suspect that Broadway's counsel chose not to allege racial discrimination in the district court suit because of a failure to exhaust administrative remedies. *See* 5 U.S.C. § 7703(b)(2); 42 U.S.C. §§ 2000e–5, 2000e–16; 29 C.F.R. §§ 1613.281–.283, .417.

action in reprisal for whistleblowing. The court concluded that Congress did not intend to create a judicial cause of action, and instead chose to limit protection against prohibited personnel activities to the investigative and corrective powers granted to the Special Counsel under 5 U.S.C. § 1206.

> Congress apparently wanted not only to provide an effective and expeditious process for investigating whistleblower allegations, but also to protect against abuse of that process to halt termination based on unsatisfactory job performance. . . . Our conclusion that no private right of action was intended by Congress is also based upon 5 U.S.C. § 7703, which provides for judicial review of adverse agency appeals *exclusively* in the courts of appeals or Court of Claims, except in cases involving claims of discrimination under Title VII, the Age Discrimination in Employment Act or the Equal Pay Act. From this we surmise that Congress did not mean to allow the district courts any extensive supervisory jurisdiction over the way in which the CSRA's mandates are enforced.

*Borrell v. United States International Communications Agency,* 682 F.2d 981, 988 (D.C. Cir.1982).

*Borrell* found that Congress was concerned not only with protecting the interests of federal employees, but also with promoting an efficiently run civil service. The Senate report on the bill which became the CSRA, in a section titled "The Need for Reform," further buttresses this conclusion:

> Assaults on the merit system have taken place despite, and in some instances because of, the complicated rules and procedures that have developed over the last century. The welter of inflexible strictures that have developed over the years threatens to asphyxiate the merit principle itself.
> The complex rules and procedures have, with their resultant delays and paperwork, undermined confidence in the merit system. Many managers and personnel officers complain that the existing procedures intended to assure merit and pro-

tect employees from arbitrary management actions have too often become the refuge of the incompetent employee. When incompetent and inefficient employees are allowed to stay on the work rolls, it is the dedicated and competent employee who must increase his workload so that the public may be benefitted. The morale of even the best motivated employee is bound to suffer under such a system. Moreover, the system's rigid procedures—providing almost automatic pay increases for all employees—makes it as difficult to reward the outstanding public servant as it is to remove an incompetent employee.

> The committee agrees with President Carter that "most civil service employees perform with spirit and integrity." Unfortunately, the existing civil service system is more of a hindrance than a help to dedicated Federal employees.

S.Rep. No. 969, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2725. While this quotation may not give a complete picture of congressional motivation, we are satisfied that Congress did not neglect expressly to create a judicial remedy where it wanted one to exist. In balancing conflicting needs for efficiency and employee protection, it chose to make certain severe personnel actions, namely "adverse actions," subject to judicial review, while leaving other "personnel actions," including reassignments, to administrative discretion.

Everything said so far with respect to reassignments applies with equal force to the claim that notice of the job vacancy that arose in Broadway's old position was not posted in accordance with departmental regulations. Given that the claim does not allege discrimination, there is no express remedy in district court. For the reasons discussed above, we decline to imply a judicial remedy under the CSRA. Broadway's remedies under the Act were to file an administrative grievance under 5 C.F.R. § 771, or to take the matter to the Special Counsel's office under 5 U.S.C. § 1206.

## III. *Bivens Cause of Action*

In the landmark case of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that an individual could sue federal officials and recover money damages for violation of his fourth amendment rights. A line of cases following this decision has established that a federal cause of action exists under the Constitution itself for certain constitutional violations, including deprivation of due process rights under the fifth amendment. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). This doctrine is inapplicable here for two reasons.

First, this circuit has been reluctant to extend a *Bivens* remedy to federal employees in suits against the government in its capacity as an employer. In *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982), we held that an alleged retaliatory demotion of a federal employee does not give rise to a constitutional cause of action.

> The employer-employee context of this case serves to distinguish it from suits such as *Bivens* and *Carlson* [*v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15] which involved plaintiffs as private citizens seeking damages against agents of the Government acting in its sovereign capacity. Inferring a *Bivens* remedy in this case would tend to interfere with and undermine the traditional control of the Government over its internal and personnel affairs. It might encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established. Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights.

*Id.* at 577. *Broussard v. United States Postal Service,* 674 F.2d 1103 (5th Cir.1982), followed *Bush* and held that a plaintiff terminated from his job as postmaster had no *Bivens* remedy against federal officials.

The reasoning of *Bush* and *Broussard* applies with greater force to the facts of this case than it does to the facts of these earlier cases. Here the deprivation is less serious—a reassignment compared to a demotion in *Bush* and a termination in *Broussard* —while the violence done to the administrative scheme by allowing plaintiffs to sue directly in federal court is greater, since reassignments are no doubt more routine than demotions and terminations, and since demotions and terminations are already subject to some judicial review under the CSRA.

Second, in order to succeed on her due process claims Broadway must show that she has a cognizable property or liberty interest in not being reassigned. To have a property interest she must have a legitimate claim of entitlement in remaining at her old job. *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Absent a promise of continued employment or some other basis for an expectancy of job retention, a government employee may even be fired without due process protections. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). We can find no basis on which the plaintiff can argue that the government expressly or impliedly promised not to reassign her to a position with the same grade and pay. She has asserted no entitlement to remain at a particular clerk typist post for an indefinite period or any specified term without fear of being transferred to another clerk typist post at the same agency.

Nor can we accept that the reassignment impinged on any constitutional liberty interest. As in *Roth,* the government did not make any charge against Broadway that might seriously damage her standing and associations in her community, such as a charge of dishonesty or immorality. As for

the alleged failure to give notice of the job vacancy at her old post, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708.

## IV. *The Administrative Procedure Act*

█ The Administrative Procedure Act ("APA") provides a general source of judicial power to review final agency actions. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA does not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We find that Broadway's reassignment was committed to agency discretion by law, for several reasons.

As explained in cloying detail above, the CSRA creates an extensive scheme regulating civil service personnel decisions. Some agency actions are reviewable by circuit courts, some by district courts, and some by no court at all. We decline to allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA. The reasoning of *Bush* in denying a constitutional right of action is applicable here, for allowing suit under the APA would likewise "encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established." 647 F.2d at 577.

█ Even absent our concern about neutralizing the CSRA, we are loath to allow judicial review of personnel decisions of this sort. In *Bullard v. Webster,* 623 F.2d 1042 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), an FBI agent brought an action challenging his transfer from Gulfport, Mississippi to Newark, New Jersey. In ad-

dressing his right of review under the APA the court stated:

> In the absence of a statute that explicitly precludes judicial review, an agency action is committed to the agency's discretion and is not reviewable when an evaluation of the legislative scheme as well as the practical and policy implications demonstrate that review should not be allowed. *Local 2855 v. United States,* 602 F.2d [574] 575 (3d Cir.1979). There must be a weighing of the need for, and feasibility of, judicial review versus the potential for disruption of the administrative process. *Kletschka v. Driver,* 411 F.2d 436 (2d Cir.1969). Criteria suggested by the Third Circuit in *Local 2855* for making such a determination include (1) the broad discretion given an agency in a particular area of operation, (2) the extent to which the challenged action is the product of political, economic or managerial choices that are inherently not subject to judicial review, and (3) the extent to which the challenged agency action is based on some special knowledge or expertise. In light of these standards and these factors, we find that the decision to transfer Bullard is not reviewable.

*Id.* at 1046. The decision emphasized that it is not feasible for courts to assess the geographic manpower needs of an agency, and that the FBI must have flexibility in making transfer decisions in order to operate efficiently. The court found itself ill-equipped to review transfer decisions which are "based upon complex considerations of agency requirements as well as the ability and personal characteristics of the employee." *Id.* at 1047. Other courts have used similar reasoning in denying review of reassignment decisions under the APA. *Coyne v. Boyett,* 490 F.Supp. 292 (S.D.N.Y.1980); *Bramley v. Webster,* 476 F.Supp. 351 (E.D. Pa.1979). We find these precedents compelling.

AFFIRMED.