Patricia C. CARROLL,
Plaintiff-Appellant,

v.

UNITED STATES of America, et al.,
Defendants-Appellees.

No. 81–1540.

United States Court of Appeals,
Fifth Circuit.

June 20, 1983.

Angel & Gassaway, Steven M. Angel, San Antonio, Tex., for plaintiff-appellant.

Anthony W. Vaughn, Asst. U.S. Atty., Fort Worth, Tex., for defendants-appellees.

may not have been included in the preliminary injunction before the district court at that time.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

This appeal requires that we distinguish those situations in which a *Bivens* plaintiff may secure direct judicial redress for a constitutional tort from those where alternative remedies are mandated. To do so we re-examine, particularly, *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981) affirmed —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648.

## Facts

Patricia C. Carroll was a civilian employee, a GS–3 checker, at Dyess Air Force Base, Texas, from July 1974 to May 1976 when she moved to Florida. Upon returning to Abilene in September 1978 she sought re-employment. Despite high commendations for her past performance she was not among a substantial number hired. It developed that the refusal to hire Carroll was based on her membership and involvement in a union; during her earlier period of employment she had served as a union steward.

Alleging a violation of Executive Order 11491, subsequently replaced by the Civil Service Reform Act of 1978, the American Federation of Government Employees filed an unfair labor practice, alleging discrimination on the basis of union membership. An Administrative Law Judge, finding that the refusal to hire Carroll grew out of the "animus flowing from her earlier activity as a union steward," ordered that she be re-employed and awarded back pay commencing on the date she should have been hired.

On review, the Federal Labor Relations Authority (FLRA) sustained the ALJ's findings of discrimination but modified the remedy. The FLRA concluded that under Executive Order 11491 an applicant for employment was not an employee and, therefore, not entitled to retroactive placement or back pay. Instead, the government was ordered to give Carroll first consideration for appropriate positions that subsequently became available.

This suit, asserting first amendment rights, followed. Originally the suit was against David F. Ibbotson, civilian personnel officer, Ray Whitley, commissary store manager and Anna Hammersmith, commissary head cashier, all of Dyess A.F.B., in both their individual and official capacities, and against the United States and various governmental entities. The court first dismissed the claims against the United States and its agencies, as well as the claim against the named defendants in their official capacities. The district court then entered the order which is the subject of the instant appeal, dismissing the demands of Carroll against Ibbotson, Whitley and Hammersmith individually.

## Bivens

In *Bivens,* plaintiff sought a personal money judgment against each of six federal drug enforcement agents for violating his fourth amendment rights. In this seminal case, the Supreme Court recognized a cause of action arising directly from the Constitution against federal agents for their misconduct. The Court declared: "Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment . . . we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." It is, however, apparent from *Bivens* that not every constitutional tort thus recognized would be enforceable in federal court with the full range of remedies generally available.

## Carlson

In *Carlson,* involving an eighth amendment complaint, the court expounded on *Bivens* and observed that a *Bivens* cause of action could be defeated in two situations:

The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." [cites omitted] The

second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.

446 U.S. at 18–19, 100 S.Ct. at 1471.

■ Thus *Carlson* teaches that an aggrieved *Bivens* plaintiff will be denied access to the full range of tort recovery only in (1) those instances in which Congress has explicitly provided an exclusive alternative, and (2) those instances in which Congress has not so affirmatively acted but special circumstances counsel measured hesitation. In each of those situations, the *Bivens* plaintiff may secure only the remedies as provided by the Congress.

The *Bivens/Carlson* prescription takes cognizance of the fact that without the power to tailor proper remedies, the courts could not assure that the substantive provisions of the Constitution are honored. It is from this linchpin that the Court concludes that congressional remedies will be given precedence only when the alternative remedies are sufficient to preserve the interests underlying the various constitutional provisions, for

> ... the judiciary has a particular responsibility to assure the vindication of constitutional interests such as those embraced by the Fourth Amendment. To be sure, 'it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.' [cites omitted] But it must also be recognized that the Bill of Rights is particularly intended to vindicate the interests of the individual in the face of the popular will as expressed in legislative majorities ....

*Bivens,* 403 U.S. at 407, 91 S.Ct. at 2010 (Harlan, J., concurring). Professor Walter Dellinger, in discussing when remedies provided by Congress would be allowed to preempt remedies otherwise available in the courts, opined that the Supreme Court will only defer to congressional remedies when "the court concludes that in light of the substitute remedy, the displaced remedy is no longer 'necessary' to effectuate the constitutional guarantee." Dellinger, W., "Of Rights and Remedies: The Constitution as a Sword," 85 Harv.L.Rev. 1532, 1549 (1972).

### Bush

In an action implicating the first amendment, the plaintiff in *Bush,* an aerospace engineer, sued the director of a federal space center alleging retaliatory demotion and defamation. We denied judicial remedies after completing the *Bivens/Carlson* analysis and finding that (a) the congressional remedies were as effective as judicial remedies in protecting the first amendment interests involved, and (b) Congress had acted, albeit not "affirmatively," in an area involving "special factors counselling hesitation" (*i.e.,* the government in the employer-employee relationship).

The plaintiff in *Bush* sought damages for his demotion. Finding that under the congressional scheme he could be reinstated and recover back pay, we concluded that meaningful relief was readily available. As to that part of the *Bivens/Carlson* analysis, we stated:

> We stress the remedies made available by Congress to an aggrieved civil servant in order to emphasize the care Congress has taken to carefully balance the employee's rights as a citizen with the government's interests in the efficient conduct of the nation's business.

647 F.2d at 576–77.

### Carroll

■ The Supreme Court's decisions in *Bivens* and *Carlson* and this court's decision in *Bush* compel reversal of the case at bar. In *Bush,* the plaintiff could readily be made whole. He could be reinstated to his position before demotion, his seniority and other job-related rights and benefits restored and any diminution in pay recovered. In short, that part of *Bivens/Carlson* was satisfied—the congressional remedies were as effective in securing the constitutional guarantees as those otherwise available to the judiciary.

In the case at bar that is not the factual scenario. As a result of the action by the FLRA reversing the ALJ, Carroll was not given the job she had been illegally denied. She was not given retroactive compensation in terms of pay and other elements of employment. The remedy of the FLRA for the illegal deprivation of a job was nothing more than a chance at employment if and when other jobs became available. Viewed relatively or absolutely, the inadequacy of this "remedy" is obvious.

█ The facts before us also fail to satisfy the other part of *Bivens/Carlson.* Even if Executive Order 11491 may be considered an appropriate substitute for congressional action, the record is devoid of any indication that the executive order was a product of an effort to "carefully balance the employee's right as a citizen with the government's interest in the efficient conduct of the nation's business." Further, in *Bush* we detailed legislation and jurisprudence reflecting that the relationship between the federal government and its employees was one which counselled hesitation. We doubt that the relationship between the government and those who apply for government jobs is a situation counselling hesitation. To date, neither the Congress nor the courts have accepted such a view. We are not thus persuaded. To uphold the district court's ruling would be the *memento mori* of *Bivens/Carlson* in this circuit. We decline the invitation to send forth that signal.

The judgment dismissing the complaint against Ibbotson, Whitley and Hammersmith is REVERSED, 522 F.Supp. 458, and the matter is REMANDED for further proceedings consistent herewith.