**Boaz AVITZUR, Plaintiff,**

v.

**Thomas E. DAVIDSON, Dr. F. A. Stephens, John E. Benson, Jr., Robert E. Weigle, F. W. Schmiedeshoff, Joseph Pepe, Richard H. Sawyer and Angelo M. DiNova, Defendants.**

Nos. 77–CV–127, 77–CV–191.

United States District Court,
N.D. New York.

Oct. 21, 1982.

Arthur F. McGinn, Jr., Albany, N.Y., for plaintiff.

McLaughlin & McLaughlin, New Bedford, Mass., for defendant Stephens; James Fogarty, New Bedford, Mass., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., for defendants; Terrence M. Kelly, Asst. U.S. Atty., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff Boaz Avitzur commenced this action in 1977, alleging that the defendants conspired to terminate his civilian employment with the Department of the Army and thereby violated his First, Fourth, Fifth and Sixth Amendment rights. It is now before the Court on a renewed motion for summary judgment made by defendants.

In our Memorandum-Decision and Order of April 28, 1980, we held that plaintiff's pursuit of administrative remedies, which led to his reinstatement with back pay, did not entirely negate his right to seek damages under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that this decision was consistent with *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). An order was then issued denying defendants' motion for summary judgment with leave to renew, and inviting in particular information with respect to defendants' assertion of qualified

immunity under *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Since that time this Court has had an opportunity to consider a substantial body of affidavits, depositions and other material introduced by both parties as well as a number of decisions from Circuit courts which have applied *Carlson* to facts analogous to those involved here. These sources cast new light on the nature and merit of plaintiff's claims and lead the Court to conclude that: (1) those of Avitzur's claims which exist only as a result of the employer-employee relationship (e.g., unconstitutional suspension and termination) may be remedied only through the various administrative procedures established, and not in a *Bivens*-type action for damages; (2) those of Avitzur's claims which would exist independent of the employer-employee relationship (i.e., unconstitutional surveillance) do not, on the uncontroverted facts now before us, amount to any deprivation of plaintiff's constitutional rights. As a result of our conclusions it has not been necessary to reach the defendant's assertions of qualified immunity.[1]

The events leading to this action arise out of Avitzur's employment as a researcher in metallurgical sciences at the Watervliet U.S. Army Arsenal.[2] Plaintiff alleges in his complaint and supporting affidavits that during 1974 and 1975 the defendants, various supervisory personnel at the facility, forced him to take a psychiatric exam against his will; unsuccessfully applied for a disability retirement for him; directed police surveillance of him; suspended him from work for one and two day periods; terminated his employment at Watervliet Arsenal. The reason such measures were taken, according to Avitzur, is in retaliation for his unfavorable critique of a professional article by defendant Pepe, his "whistle blowing" with regard to possible adminis-

---

1. In response to plaintiff's argument that this Court is now bound by the "law of the case", see *McClain v. United States,* 676 F.2d 915 (2d Cir. 1982) (the law of the case is a discretionary doctrine; court may review its earlier rulings).

2. For a somewhat more extensive summary of the facts, see Memorandum-Decision and Order, 77–CV–127, 77–CV–191, April 28, 1980.

trative irregularities, and his general insistence upon learning and asserting his employment rights.

The plaintiff first sought relief through the Army Grievance and Appeals System and, through that procedure, was afforded reinstatement with back pay. He insists, however, that the administrative remedy did not address his constitutional grievances, and did not fully compensate him for the injuries he sustained, primarily emotional upset and an "odious blemish" to his professional career. The question presented here, then, is to what extent may the plaintiff bring an action for damages directly under the Constitution on the allegations set forth above.

In *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the Supreme Court held that victims of a warrantless search and seizure by federal officers are entitled to seek damages where no other remedy is available. In finding an implied cause of action under the Constitution, the Court reasoned that there was "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." *Id.,* at 397, 91 S.Ct. at 2005. In addition, it found "no special factors counseling hesitation" in determining that such a cause of action exists. *Id.,* at 396, 91 S.Ct. at 2004.

More recently, in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court elaborated on its explanation of a *Bivens*-type cause of action, holding that this constitutional action would provide a more effective remedy against federal prison officials than would an action under the Federal Tort Claims Act. *Id.,* at 20, 100 S.Ct. at 1473. The *Carlson* court confirms that a remedy under *Bivens* is available unless:

1. There are "special factors counseling hesitation in the absence of affirmative action by Congress, *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004; *Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979)," *or*

2. "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective," *Bivens, supra* at 397, 91 S.Ct. at 2005; *Davis v. Passman, supra* at 245–247, 99 S.Ct. at 2277–2278.

446 U.S. at 18, 100 S.Ct. at 1472.

In the wake of *Carlson, Bush v. Lucas,* 647 F.2d 573 (1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982) was heard on remand from the Supreme Court for reconsideration by the Fifth Circuit Court of Appeals. In *Bush,* plaintiff was a federal employee seeking damages under *Bivens* for retaliatory demotion, in violation of his First Amendment rights. Like the plaintiff in this case, Bush first pursued an administrative remedy, under the Civil Service Reform Act, and was reinstated prior to commencing his *Bivens*-type action. Applying *Carlson,* the court found that the federal employer-employee relationship implicated the kind of factors which would counsel hesitation in finding a right of action under the constitution:

The employer-employee context of this case serves to distinguish it from suits such as *Bivens* and *Carlson* which involved plaintiffs as private citizens seeking damages against agents of the Government acting in its sovereign capacity. Inferring a *Bivens* remedy in this case would tend to interfere with and undermine the traditional control of the Government over its internal and personnel affairs.

It might encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established. Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights.

*Id.,* at 577. The *Bush* Court noted that its opinion was consistent with the decision in *Bishop v. Tice,* 622 F.2d 349 (8th Cir. 1980). In that case the court held that plaintiff did not have a substantive due process claim in light of the appeals process provided by the Civil Service Commission. *Id.,* at 357.

Most recently, in *Broussard v. U.S. Postal Service,* 674 F.2d 1103 (1982), the Fifth Circuit considered a postal worker's claim for damages against supervisors who allegedly infringed his due process rights by failing to grant him a full administrative hearing. Citing *Bush,* the court held that the plaintiff had no right of action for damages against his superiors; that the hearing before the postal service and subsequent judicial review provided the exclusive means of vindicating his rights.[3]

■ Turning to the instant case, it is helpful to treat the plaintiff's allegations separately, since the nature and adequacy of the administrative remedy differed somewhat with respect to them. One of Avitzur's allegations is that the defendants, acting with improper motives, applied to the Civil Service seeking a disability retirement of the plaintiff.[4] Such applications are processed in accordance with a comprehensive system of administrative procedures, established by the Civil Service Commission pursuant to 5 U.S.C. § 8347, which protect federal employees from wrongful efforts to medically retire them. *See,*

*McFarland v. United States,* 207 Ct.Cl. 38, 517 F.2d 938 (1975); *c.f., Fitzgerald v. Hampton,* 467 F.2d 755 (D.C.Cir.1972) ("Congress entrusted the (Civil Service) Commission with the function of hearing and deciding appeals from assertedly wrongful separations from federal service"). In this instance, such procedures were followed, and the disability retirement was denied by the Civil Service Commission.

As noted above, *Bush v. Lucas,* 647 F.2d 573, and *Bishop v. Tice,* 622 F.2d 349, establish that a federal employee who has a remedy for his grievance under the Civil Service Act may not raise an additional constitutional claim for damages based on the same factual circumstances. The special context of a federal employer-employee dispute coupled with the existence of a comprehensive administrative scheme constitute those "special factors counseling hesitation", *Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846, which militate against permitting a *Bivens* action on this component of Avitzur's complaint.[5]

■ Unlike the agency-filed disability retirement, the defendants' other acts were not the subject of any direct Civil Service Commission review. Instead, the events leading up to the termination of Avitzur's employment were reviewed through the Army Grievance and Appeals System.[6]

**3.** We are aware of the recent Supreme Court decision in *Harlow v. Fitzgerald,* — U.S. — (1982), 102 S.Ct. 2727, 73 L.Ed.2d 396, which reached the question of immunity in a suit for damages against Presidential aides who allegedly conspired to discharge plaintiffs in violation of their constitutional and statutory rights. However, the court explicitly declined to address the "not insubstantial" question of whether, in light of *Bush v. Lucas,* 647 F.2d 573, a *Bivens*-type action could be maintained at all in this federal employment context. — U.S. at · ··, n. 36, 102 S.Ct. at 2740, n. 36. It left this question for subsequent determination by the lower courts. Moreover, it may be noted that the considerations involved in actions against federal officers at the highest levels of government may differ considerably from those in the less ethereal levels of the bureaucracy.

**4.** Plaintiff also contends that such application violated the Federal Personnel Management

Rules which provide for agency-filed disability retirement. Apparently, the basis of this claim is the same as that of the constitutional claim: that the procedures were instituted with improper motives. Since the plaintiff has failed to even articulate, much less support, the theory that an action for damages exists for violation of these regulations, the Court does not find it necessary to construe such regulations now.

**5.** Neither *Bush* nor *Bishop* considered whether the Civil Service Act was an "equally effective remedy", since the special factors counseling hesitation were deemed sufficiently weighty to deny the constitutional cause of action for damages.

**6.** Avitzur was an "exempt employee" under 5 U.S.C. § 7501 and § 7701, and therefore was not subject to the Civil Service appeals procedures.

These procedures were promulgated by the Army under the supervision of the Civil Service Commission, pursuant to Executive Order No. 10987 of January 18, 1962, and essentially provide for an impartial hearing of employment related grievances with subsequent review leading, eventually, to the Secretary of Defense.

Although such procedures were neither Congressionally created nor explicitly declared to be a substitute for recovery directly under the Constitution, they do provide a comprehensive scheme for relief of grievances arising in the federal employment context. As such, the same special factors counseling hesitation which were discerned in *Bush,* in *Bishop,* in *Broussard,* and in the disability retirement allegation discussed above, are present here. In particular we note that "(t)he role of the Government as an employer toward its employees is fundamentally different from its role as a sovereign over private citizens generally", *Bush v. Lucas,* 647 F.2d at 576, and that " 'the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs' ". *Id., quoting Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

The Army Grievance and Appeals System is a comprehensive remedial system regulating the internal employment relations of that department. Though promulgated by executive order, it was fashioned under the auspices of the Civil Service Commission and is continuously monitored by that congressionally-created agency. To permit a cause of action outside of this system is to tamper with the "proper balance between promoting governmental efficiency and protecting the rights of employees aggrieved by improper personnel action", *Bush v. Lucas,* 647 F.2d at 576, established in this instance with input from both the executive and legislative branches.

Accordingly, we hold that the plaintiff Avitzur may not maintain a *Bivens*-type cause of action based on allegations that the defendants forced him to take a psychiatric exam, suspended him, and terminated his employment.[7]

Plaintiff's assertion that he was the subject of unconstitutional surveillance is analytically different from his other claims: it is the only constitutional deprivation he alleges which could exist outside of the federal employment context. That is, the allegation of surveillance by Army officers could implicate Fourth Amendment privacy rights whether the subject was a federal employee or a private citizen. The remedy of reinstatement with back pay would be completely irrelevant to, and ineffectual in, vindicating the constitutional interest impaired by wrongful surveillance. For persons so aggrieved, like for Bivens, the remedy is "damages or nothing". *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring).

However, recent affidavits by both the plaintiff and defendants reveal the flimsy nature of this particular claim. The "surveillance" complained of is the monitoring by guards at the entrance to the Arsenal of the various times during the day that Avitzur entered and exited from the facility. These gate checks were ordered in response to reports that Avitzur had frequently been absent without permission. Under the circumstances, the Court is constrained to hold that such "surveillance" does not amount to a deprivation of any constitutional right held by the defendant. Assuming that the plaintiff has any privacy interest at all in his public entering and exiting from the Arsenal (a proposition for which he has failed to produce any support), the interests of his employer and the public in maintaining an efficient staff far outweigh whatever interest Avitzur had with respect to this

---

**7.** With respect to the allegation of a forced psychiatric exam, it should be noted that the plaintiff is not contending that the Army may not constitutionally require an employee to be examined; he merely maintains that in this instance the order was the product of a conspiracy to terminate his employment. That issue was sufficiently addressed and redressed by both the procedures which led to the denial of the disability retirement and the procedures which led to Avitzur's reinstatement with back pay.

minimal intrusion. *Cf. O'Brien v. DiGrazia,* 544 F.2d 543 (1st Cir. 1976) (Police Commissioner's interest in acquiring information about patrolmen's income outweighs any privacy interest of employee).

For the reasons set forth above, defendants' motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.