**George F. METZ and Ingrid Metz, Plaintiffs,**

v.

**David W. McKINLEY, David G. Epstein, William D. Allen, Ruth C. Kent, A. George Graves, Robert E. McCann, James D. Lanier and John J. O'Meara, Defendants.**

**Civ. A. No. 282–215.**

United States District Court, S.D. Georgia, Brunswick Division.

Feb. 24, 1984.

George M. Roundtree, Terry K. Floyd, Brunswick, Ga., for plaintiffs.

Kenneth Etheridge, Asst. U.S. Atty., Savannah, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

This action arises out of the circumstances surrounding the dismissal of plaintiff George Metz from his federal employment at the Federal Law Enforcement Training Center ("FLETC") in Brunswick, Georgia. In their complaint filed on November 11, 1982, plaintiffs allege numerous deprivations of their constitutional rights in an effort to invoke the Court's federal question jurisdiction under the seminal case of *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs have also filed a separate action against the United States and several of its executive agencies (CV 283–178) seeking damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* The *Bivens* suit against the individual defendants is currently before the Court on defendants' motions to dismiss or, in the alternative, for summary judgment.

## FACTS

George Metz was a driving instructor at the FLETC facility until his removal in November of 1982. The individual defendants are various supervisory employees at the facility.[1] The facility is operated by the Department of the Treasury as a training service to various law enforcement agencies of the Federal Government. The facility offers a variety of training courses in weaponry, surveillance techniques and automobile maneuvering.

According to plaintiffs' complaint, which has been adopted by the defendants for purposes of their dispositive motions, his personnel problems with the individual defendants occurred between 1977 and 1979.

During this two-year period, plaintiff claims that he was deliberately passed over for promotions in favor of less qualified and deserving candidates. This deliberate treatment at the hands of the defendants, in turn, caused plaintiff to vocalize various charges of misconduct against some of the defendants to other employees at FLETC. Plaintiff asserts that these complaints precipitated a conspiracy among the defendant supervisors to rid themselves of George Metz.

Pursuant to this alleged conspiracy, plaintiff claims that in July of 1982 he received a demotion in the characterization of his job performance from "outstanding" to "excellent." The performance evaluation was completed by defendant Carter, plaintiff's immediate supervisor in the Driver Specialties Branch at FLETC. This performance evaluation prompted Metz to become even more uncomplimentary to the defendants in his frank conversations with other nonsupervisory FLETC employees.

As a result of these "conversations" plaintiff was having with his co-workers, he was asked to attend a meeting on August 3, 1982, with defendant Lanier. Lanier was also plaintiff's immediate supervisor in the Driving Instructor's branch of the faculty at FLETC. Also present at this meeting were defendants Epstein and McCann. These defendants are both supervisors in the Faculty Management division of FLETC. Plaintiff characterizes this meeting as a "trap" whereby defendants attempted to elicit statements that would later be used against plaintiff. Plaintiff characterizes his own conduct at this meeting as a "voicing of his frustrations and concerns" about his treatment at the hands of his supervisors.

At the conclusion of this meeting, Metz, a reservist in the United States Marine

---

1. The discussion which follows points out plaintiffs' allegations against specific individuals. Not all the individual defendants, however, were specifically identified with the alleged wrongful conduct. These individuals include Ruth C. Kent (the Personnel Officer at FLETC) and William D. Allen (the Deputy Director at FLETC). For purposes of the motions immediately before it, the Court will treat these defendants as participants in the "maintenance and enforcement of illegal personnel policies."

Corps, departed to report for duty at a military installation in Columbia, South Carolina. For whatever purpose, defendants decided that plaintiff presented a threat to their personal safety. Based on this belief, defendants took the following action. First, McKinley and Graves contacted the priest at plaintiff's parish, Father Raymond Carr, and requested that he accompany them to the Metz residence. McKinley was the then-Acting Director of FLETC and Graves was another supervisor in the Driving Instructor's branch of the faculty at FLETC. McKinley and Graves told Father Carr that the visit was necessary to locate Metz and to ask his wife, plaintiff Ingrid Metz, what she knew about the personal threats her husband had been making against one or more of the defendants. Father Carr telephoned Mrs. Metz and received her permission to bring the defendants over to visit. At this visit, Graves and McKinley were told that Metz was on his way to Columbia, South Carolina, to report for duty in the military.

In the early morning hours of August 4, 1982, defendants secured an arrest warrant against plaintiff on charges of terroristic threats. Plaintiff alleges that the warrant was obtained on the advice of FLETC's legal counsel, John J. O'Meara. FLETC officials also contacted Department of Treasury personnel in Washington, D.C., and the United States Marine Corps to advise them of the action taken against plaintiff. The communication to the Marine Corps led to the seizure of plaintiff, and the search of his vehicle, immediately upon his arrival at the South Carolina base. While in custody, plaintiff was subsequently transported to a nearby Army mental hospital for evaluation. There, plaintiff claims he was detained for two days until he was cleared to return to active duty at his reservist position.

His mental clearance by the Army psychiatrists did not, however, convince defendants of plaintiff's mental stability and nonaggressive tendencies toward them. On August 6, 1982, FLETC officials notified plaintiff that he was being placed on indefinite and involuntary sick leave status pending an examination by a civilian psychiatrist. A notice to the effect that plaintiff was being placed on indefinite sick leave status was posted by FLETC officials and viewed by other employees at FLETC. Plaintiff also claims that his desk was searched without his permission on August 9, 1982.

After serving out his remaining temporary duty in the military without further incident, plaintiff returned to Brunswick. He underwent another psychiatric evaluation and was again found to be normal in all respects. On October 14, 1982, Metz was notified that he was to return to work but would be assigned to another instructional program. This notification, however, was countermanded by a letter from Graves dated October 20, 1982. This letter notified plaintiff that FLETC intended to terminate him based on the threatening statements he allegedly made to his co-workers and at the August 3, 1982, meeting. The letter advised plaintiff of the full panoply of administrative procedures available to him to utilize in contesting his termination. Counsel for Metz responded with a letter addressed to Graves that charged defendants with a conspiracy designed to force plaintiff's resignation from federal employment.

Upon consideration of the response of Metz's lawyer and the evidence of the purported life-threatening statements attributed to plaintiff, Metz was notified of his termination from FLETC by letter dated November 10, 1982. The decision to terminate was made by defendant McCann. McCann's notification letter also delineated plaintiff's right to appeal the decision to the Merit System Protection Board.

Rather than relying solely on the Merit Board appeals process, plaintiffs filed the instant lawsuit on November 11, 1982. Count I of the complaint sets forth plaintiffs' *Bivens* claims by alleging constitutional deprivations under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth

Amendments to the Constitution.[2] Count II of the complaint launches a due process attack on the termination decision itself. In this regard, plaintiff claims that the termination decision by McCann was a pretextual formality in that McCann was predisposed to decide against plaintiff. Finally, Count III of the complaint enumerates the common law torts of false imprisonment, false arrest, defamation, malicious prosecution and invasion of privacy as further grounds for imposing liability on the defendants. The plaintiffs invoke the Court's pendent jurisdiction over these claims.

In response to this action based upon *Bivens*, the defendants, by motions to dismiss, have interposed a number of defenses. Defendants argue that the federal claims, which purport to arise directly under various constitutional amendments, cannot be pursued in a *Bivens*-type action for damages. The defendants also request that, in the event the Court finds itself without jurisdiction to entertain plaintiffs' claim under *Bivens*, the Court decline to exercise its pendent jurisdiction over the state tort claims. The Court now turns to analyze the availability of relief to the plaintiffs in light of the defenses raised.

## I. Bivens Claims

The federal question jurisdiction of federal courts was significantly expanded in the watershed case of *Bivens v. Six Unknown Narcotics Agents, supra*. In *Bivens*, the Supreme Court established the independent right to sue federal officers who have violated a person's constitutional

rights.[3] In subsequent cases, the Court enumerated two situations where this right of action can be defeated:

> The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." [*Bivens*,] 403 U.S., at 396 [91 S.Ct. at 2004]; *Davis v. Passman*, 442 U.S. 228, 245 [99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. *Bivens, supra* at 397 [91 S.Ct. at 2005]; *Davis v. Passman*, 442 U.S., at 245–247 [99 S.Ct. at 2276–78].

*Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

The first situation outlined by the *Carlson* Court, where special factors counsel hesitation, was found to exist by this Circuit in the federal employee-employer context in suits brought under *Bivens*. *Bush v. Lucas*, 647 F.2d 573 (5th Cir.1981) (Unit B), unanimously affirmed by the Supreme Court, —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

In *Bush*, a N.A.S.A. aerospace engineer brought suit against his immediate supervisor seeking damages for the purported defamation of his character and retaliatory demotion in violation of his First Amendment right of free speech. The issue before the Fifth Circuit in *Bush* was whether or not to recognize the *Bivens* damage remedy for a federal employee who alleges

2. By an addendum to their complaint dated December 10, 1982, plaintiffs purported to amend ¶ 6 of Count I to sue the defendants in their official as well as their individual capacities. A suit against federal officers in their official capacity, however, is a suit against the United States and, as such, is not maintainable in a *Bivens* action. *See Bennett Constr. Co., Inc. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo. 1977).

3. In order to state a *Bivens* claim for damages under the Constitution, the complaint must (1) assert a constitutionally protected right and (2) state a cause of action for damages that asserts

the right. *Bishop v. Tice*, 622 F.2d 349, 353 (8th Cir.1980). With respect to Mrs. Metz, the only conceivable constitutional violation she could assert is one involving the Fourth Amendment that stems from the visit to her house. In her deposition, Mrs. Metz admits that she willingly agreed to talk to McKinley and Graves and freely admitted them into her house along with Father Carr. Deposition of Ingrid Metz, at p. 17, filed March 7, 1983. Consequently, her assertion of a Fourth Amendment deprivation is devoid of merit. Defendants' motion for summary judgment as to the *Bivens* claims of Mrs. Metz, therefore, must be granted.

that his First Amendment rights have been violated. The Court of Appeals, applying the "special factors counselling hesitation" prong of *Carlson*, noted that:

> ... in this case the unique relationship between the Federal Government and its Civil Service employees is a special consideration which counsels hesitation in inferring a *Bivens* remedy in the absence of affirmative congressional action. The role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally.

> \* \* \* \* \* \*

> This special relationship affects not only the substantive rights of public employees, but also the way in which an aggrieved employee can assert and redress his rights in the employment context. Consistent with the notion that the Government should have wide latitude and control over its employees, Congress, rather than the Courts, has traditionally carried the burden of regulating the Government employer-employee relationship.

*Id.* at 576.

After pointing to the pervasive protection provided by the specific notice, review and appeals procedures contained in the Civil Service Reform Act of 1978, 5 U.S.C. § 7501 *et seq.*, the Fifth Circuit held that:

> The employer-employee context of this case serves to distinguish it from suits such as *Bivens* and *Carlson* which involved plaintiffs as private citizens seeking damages against agents of the Government acting in its sovereign capacity. Inferring a *Bivens* remedy in this case would tend to interfere with

and undermine the traditional control of the Government over its internal and personnel affairs. It might encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established. Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights.

*Id.* at 577. On this basis, the Government employer-employee relationship was held to be a special factor counseling hesitation in the recognition of a constitutional cause of action.

On review by writ of *certiorari*, the United States Supreme Court upheld the Fifth Circuit ruling. Recounting the history of reform in the review procedures for adverse actions taken against civil service employees, the Court concluded that it would be "inappropriate for us to supplement [the pervasive] regulatory scheme with a new judicial remedy." 103 S.Ct. 2404, 76 L.Ed.2d at 651. In addition, the Court noted that the failure of existing remedies to provide complete relief for the aggrieved federal employee claiming a constitutional deprivation would not alter the deference paid to the "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." *Id.* at 664.

▪▪▪ Plaintiffs' complaint presents a multitude of constitutional claims under the First, Fourth, Fifth and Sixth Amendments.[4] His main claim asserts that his

---

**4.** Metz's assertion of violations under the Eighth, Ninth and Fourteenth Amendments fail to support his claim of constitutional deprivation. The Eighth Amendment's prohibition against cruel and unusual punishment protects only those individuals who have been convicted of a crime. *Garcia v. United States*, 666 F.2d 960, 965 (5th Cir.1982) (Unit B). Metz does not claim to stand convicted of a crime. Similarly, the Fourteenth Amendment is inapplicable to the conduct of the defendants because of the Amendment's express requirement of state ac-

tion. Moreover, plaintiff's allegations concerning his deprivation of liberty without due process of law are better analyzed under the Fifth Amendment in the *Bivens* context. Finally, the Ninth Amendment standing alone houses no constitutional guarantees of freedom. *Charles v. Brown*, 495 F.Supp. 862 (N.D.Ala.1980). Thus, plaintiff's assertion of the Ninth Amendment adds nothing to his attempt to demonstrate that his constitutional rights have been violated.

termination from FLETC was the result of a conspiracy by his supervisors to terminate him in retaliation for his statements about their illegal policies and practices. This claim is precisely the same constitutional violation advanced in *Bush v. Lucas, supra.* *See also Broussard v. United States Postal Service,* 674 F.2d 1103 (5th Cir.1982) (*Bush v. Lucas* precludes federal *Bivens* suit alleging conspiracy to deny plaintiff his constitutional rights); *Avitzur v. Davidson,* 549 F.Supp. 399 (N.D.N.Y. 1982) (disallowing *Bivens* cause of action based on allegations that supervisors forced plaintiff to take a psychiatric examination and suspended him from employment in retaliation for his unfavorable comments about defendants). Metz's claim of retaliation in violation of his right of free speech, therefore, is barred by *Bush v. Lucas.*

■ Plaintiff also asserts a defamation claim under the Fifth Amendment. The law does recognize a Fifth Amendment violation where a stigmatizing charge against the character of the terminated employee is publicized and there is a subsequent denial of due process. *In re Selcraig,* 705 F.2d 789, 795 (5th Cir.1983). While the Court has serious reservations about finding that the mere posting of notice of plaintiff's involuntary sick leave constitutes an official publication of a stigmatizing charge, the Court does find that plaintiff has not been denied the due process name-clearing hearing mandated by the Fifth Amendment. His vast procedural remedies, including the right to be heard before the Merit Systems Protection Board, 5 U.S.C. § 7701, and the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1), more than adequately provides him with procedural due process.

*See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Similarly, plaintiff's claim that he has been denied his due process rights because defendant McCann presided over the initial termination decision at the agency level is barred by *Bush v. Lucas, supra.* This alleged Fifth Amendment violation is subject to redress within the appeals system set up by Congress in the Civil Service Reform Act of 1978.[5] *See Ray v. Nimmo,* 704 F.2d 1480 (11th Cir.1983) (barring a Fifth Amendment claim if plaintiff is found, on remand, to be a federal employee within the meaning of *Bush v. Lucas*); *Gillam v. Roudebush,* 547 F.Supp. 28 (N.D.Ill.1982) (*Bush v. Lucas* held to bar *Bivens* complaint alleging that defendant's interference in the administrative review process constituted a violation of plaintiff's Fifth Amendment right to a hearing on his termination).

Plaintiff's remaining assertions of constitutional violations stem from his seizure at the Marine Corps base, his subsequent incarceration and the search of his work desk at FLETC. For purposes of analyzing these claims in light of *Bush v. Lucas,* the Court will assume that the conduct of the defendants, in informing Marine Corps personnel about their belief as to plaintiff's mental stability, in using an arrest warrant to coerce plaintiff into submitting to a psychiatric examination and in searching plaintiff's desk, constitutes a violation of the plaintiff's Fourth, Fifth and Sixth Amendment rights.[6]

■ In opposing defendant's motion to dismiss based on *Bush v. Lucas,* plaintiff argues that his assertion of these additional Fourth, Fifth and Sixth Amendment

---

**5.** An elaborate grievance procedure has also been set up by Congress for the benefit of federal Civil Service employees who claim that their rights have been trammeled by their supervisors. *See* 5 C.F.R. §§ 771.201 *et seq.*

**6.** Since the defendants did not personally restrict plaintiff's freedom of movement, it is difficult to see how they can be held accountable under the Fourth Amendment for the actions

taken by the Marine Corps. There are cases, however, that have found that the wrongful exhortations of the defendants to the police to arrest the plaintiff constitutes an actionable deprivation of the plaintiff's liberty under the Fifth Amendment. *See Lessman v. McCormick,* 591 F.2d 605 (10th Cir.1979); *Duriso v. K-Mart No. 4195, Div. of S.S. Kresge Co.,* 559 F.2d 1294 (5th Cir.1977).

claims against his supervisors takes his case out of the employment context dealt with in *Bush.* Fortunately, the Eleventh Circuit was recently called upon to address this same contention in *Gleason v. Malcom,* 718 F.2d 1044 (11th Cir.1983).

In *Gleason,* the plaintiff had brought suit under *Bivens* alleging that she was the victim of a conspiracy conceived to terminate her from federal employment. Gleason also alleged that her supervisors and other co-workers violated her First, Fourth and Fifth Amendment rights by listening to her telephone conversations and by making notes of the times she entered and exited the office. Finally, Gleason complained that her desk had been illegally searched by her supervisor. The district court in *Gleason* dismissed the complaint on defendant's motion.

On appeal, the Eleventh Circuit affirmed. After tracking the relevant language in the Supreme Court's opinion in *Bush v. Lucas* and paying particular attention to the Court's rejection of Bush's argument that "Civil Service remedies do not provide for punitive damages or a jury trial and do not adequately deter the unconstitutional exercise of authority by supervisors," 103 S.Ct. at 2408, n. 8, the Court of Appeals held that:

> [w]hile *Bush* involved only a first amendment claim, as compared with Gleason's multiple assertions of first, fourth, fifth and sixth amendment violations, the Supreme Court's careful analysis applies with equal force to this case. The nature of Bush's particular constitutional injury played little role in the Court's reasoning. Rather, the Court focused on the "special factor," i.e., the federal employment relationship, in determining that there was no need for a new judicially created cause of action.

This generally restrictive view of *Bivens*-type claims is emphasized by the fact that on the same day the Court also held that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations. *Chappell v. Wallace,* — U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

*Id.* at 1048.

As was the case in *Gleason,* plaintiff in the case at bar has alleged various Fourth, Fifth and Sixth Amendment claims stemming from the conduct of his superiors with respect to the plaintiff. Based on the Eleventh Circuit's decision in *Gleason,* the special factors counseling hesitation—*i.e.,* the delicate balancing done by Congress in enacting the elaborate remedial scheme available to federal employees—applies despite plaintiff's broad allegations of deprivation under the Fourth, Fifth and Sixth Amendments.[7] Accordingly, plaintiff's complaint asserting federal question jurisdiction under *Bivens* must be dismissed for lack of subject matter jurisdiction.

## II. State Claims

■ In light of the finding that it is without federal question jurisdiction to consider plaintiffs' claims that arise directly under the Constitution, the Court also declines to accept jurisdiction over plaintiffs' pendent state claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdiction sense, the [pendent] state claims should be dismissed as well").

## CONCLUSION

In summary, the Court has determined that the plaintiffs' *Bivens* action cannot be

---

7. The Court recognizes that at least one district court has indicated that an alleged Fourth Amendment violation is outside the bar of the Fifth Circuit's decision in *Bush v. Lucas. See Avitzur v. Davidson,* 549 F.Supp. 399, 403 (N.D. N.Y.1982) (indicating that a Fourth Amendment claim may be allowed because unlawful surveillance can exist outside the scope of federal employment and only money damages can vindicate the constitutional interest impaired). To the extent that the district court's rationale in *Avitzur* conflicts with the Eleventh Circuit's opinion in *Gleason v. Malcom,* the Court declines to follow it. *Cf. Carroll v. United States,* 707 F.2d 836 (5th Cir.1983) (the relationship between the Government and those who apply for Government jobs is not a situation counseling hesitation).

maintained in light of *Bush v. Lucas.* Accordingly, the defendants' motions to dismiss the plaintiffs' complaint is hereby GRANTED. The Clerk is directed to enter an appropriate judgment dismissing this action.