Edward L. **WALLER**, Plaintiff,

v.

**INTERNATIONAL HARVESTER COMPANY**, Defendant.

No. 82 C 0465.

United States District Court, N.D. Illinois, E.D.

Jan. 20, 1984.

See also 98 F.R.D. 560; 574 F.Supp. 166.

Barbara J. Revak, Rufus L. Cook, Ltd., Chicago, Ill., for plaintiff.

David P. Radelet, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for defendant.

1. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1307 (hereinafter the "Union") was a co-defendant in this matter until November 23, 1983, when the Union was dismissed as a defendant with prejudice upon Motion by Plaintiff. Plaintiff's allegations under the Civil Rights Act of 1871, 42 U.S.C. § 1985, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, all of which were allegations of

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BUA, District Judge.

The above-captioned matter, having come on to be heard by the Court without a jury, and the Court having heard the testimony of the plaintiff's witnesses, having examined the exhibits introduced into evidence, does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. This is an action for declaratory relief, injunctive relief, and monetary damages pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1970) (hereinafter "§ 1981").[1]

2. The jurisdiction of the Court is invoked under 28 U.S.C. § 1343 (1970); and 42 U.S.C. § 1988 (1970).

3. The employment practices alleged herein were committed within the Northern District of Illinois, at the West Pullman Works Plant of Defendant International Harvester Company.

4. Plaintiff is a black male citizen of the United States, and is a resident of the City of Chicago, County of Cook, and the State of Illinois.

5. Defendant International Harvester Company (hereinafter "Harvester") is a corporation duly organized under the laws of the State of Delaware, and is conducting business in the State of Illinois.

6. The Union was the certified collective bargaining representative of the production and maintenance employees at Defendant Harvester's West Pullman Works plant,

conspiracy between Defendant Harvester and the Union, were stricken and dismissed along with the Union upon Motion by Defendant Harvester. Plaintiff's allegations under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* (1970) (hereinafter the "NLRA") had previously been dismissed in response to the Union's Motion For Summary Judgment, on November 17, 1983.

under applicable provisions of the NLRA, at all times relevant to this lawsuit.

7. Plaintiff was hired by Defendant Harvester on February 12, 1962, and was continuously employed by Defendant Harvester at its West Pullman Works Plant during all periods relevant to this lawsuit. Plaintiff was placed on permanent layoff status on October 8, 1982, as a result of the shutdown of Harvester's West Pullman Works plant.

8. The Union and Defendant Harvester were parties to a series of three-year collective bargaining agreements during all periods relevant to this lawsuit. The three-year collective bargaining agreements relevant to this lawsuit commenced on November 8, 1973, and November 30, 1976, and expired on October 1, 1976 and October 1, 1979, respectively. Included and incorporated in these collective bargaining agreements was the Supplemental Agreement on Seniority, dated October 5, 1964, which was in force and effect during all periods relevant to this lawsuit.

9. Under the seniority provisions of the applicable collective bargaining agreements, permanent job openings, which occur when an employee leaves the Company or there is an increase in force, are filled through a job posting procedure. Specifically, such permanent openings are posted throughout the plant, and employees are free to sign up or "bid" for the open position. The position is then awarded to the most senior bidding employee who is otherwise qualified for the position under the collective bargaining agreement.

10. Under the seniority provisions of the applicable collective bargaining agreements, if an employee's job is eliminated as the result of a reduction-in-force (RIF), the displaced employee may then "bump" a less senior employee from his or her job if the senior employee is capable of performing that job. An employee is deemed "capable of performing" the job if he or she can "break in" and learn the job within three working days. Employees who are displaced during a RIF bump in the following order: first, within their job classifica-tion; second, within their department within two labor grades of their present position; and finally, plant wide to any job at any labor grade. There are no job postings during a RIF.

11. Under the seniority provisions of the applicable collective bargaining agreements, Defendant Harvester also maintains a job request system, whereby employees may submit a written request to be transferred to certain jobs. These requests are honored to the extent possible within the seniority provisions of the collective bargaining agreements.

12. Temporary job openings, which occur when an employee temporarily leaves the Company without breaking his or her seniority and is scheduled to return, are not posted, but are filled through the job request system. Specifically, temporary job openings are awarded to the most senior employee who has a written request on file for the job in question, and who still wants the job.

13. The applicable collective bargaining agreements contained a four-step grievance procedure whereby aggrieved employees or the Union could grieve conduct by Defendant Harvester which, in their view, violated the terms of the collective bargaining agreements.

14. Plaintiff became a member of the Union shortly after being hired by Defendant Harvester, and was continuously a member of the Union during all periods relevant to this lawsuit.

15. In July of 1983, the West Pullman Works plant of Defendant Harvester completely and permanently ceased operations, and all remaining production and maintenance employees were placed on permanent layoff status.

16. Plaintiff worked as a third-shift grinder operator in Department 333 (job classification GX–25–B–9) from April 8, 1974 to January 2, 1975.

17. During the period referred to in paragraph 16, a new grinder was installed in Department 333 and was put into operation (hereinafter referred to as the "new grind-

er"). Other, less-modern grinders that had been in operation in Department 333 continued in operation after the new grinder was installed.

18. When the job opening for the new grinder was posted, Plaintiff did not bid on that job. Moreover, Plaintiff did not submit a written or an oral request for transfer to that job. Accordingly, Defendant Harvester was under no obligation to place Plaintiff on the new grinder.

19. Plaintiff never operated the new grinder during the period referred to in paragraph 16. Plaintiff operated the older, less-modern grinders during this entire period.

20. During the period referred to in paragraph 16, Plaintiff never requested to be trained to operate the new grinder.

21. During the period referred to in paragraph 16, Plaintiff never claimed that he should have been trained to operate the new grinder, through contractual grievance procedures or otherwise.

22. During the period referred to in paragraph 16, Plaintiff was not denied training on the new grinder because of his race, nor for any other unlawful or discriminatory reason.

23. On March 21, 1976, Plaintiff was working in Department 191 at Defendant Harvester's West Pullman Works plant. On that same date, Defendant Harvester implemented a reduction in force in Department 191. As a result of that reduction in force, Plaintiff's then-present job in Department 191 (job classification C–235–9) was eliminated, and Plaintiff was reassigned to the job of bore operator in Department 302 (job classification BX–37–A–6).

24. Plaintiff's reassignment referred to in paragraph 23 was made pursuant to the seniority provisions of the collective bargaining agreement governing bumping during a RIF.

25. On March 22, 1976, Plaintiff instituted a grievance, pursuant to the grievance procedures set forth in the applicable collective bargaining agreement, wherein he claimed that the reassignment referred to in paragraph 23 was improper under the terms of the collective bargaining agreement. Specifically, Plaintiff asserted in this grievance (hereinafter referred to as "grievance 1289"), that he should not have been reassigned to job classification BX–37–A–6, but rather should have been reassigned to job classification GX–25–B–9 in Department 333 to operate the new grinder.

26. At the time Plaintiff instituted grievance 1289, employee Francisco Rodriguez was operating the new grinder in Department 333 (job classification GX–25–B–9). Rodriguez was less-senior than Plaintiff. In instituting grievance 1289, Plaintiff was seeking to "bump" Rodriguez from that job.

27. Rodriguez is Hispanic.

28. Defendant Harvester denied grievance 1289. Thereafter, the Union pursued grievance 1289 through the various steps of the contractual grievance procedure.

29. Grievance 1289 was ultimately settled by the Union and Defendant Harvester sometime after the Step 2½ grievance meeting. Pursuant to the terms of that settlement, Plaintiff was given the opportunity to "break in" on the new grinder in job classification GX–25–B–9, Department 333, beginning on January 18, 1977.

30. Defendant Harvester's initial denial of grievance 1289 was based upon legitimate considerations, and was not based upon Plaintiff's race, nor upon any other unlawful or discriminatory considerations.

31. In early August of 1976, during the pendency of grievance 1289, Francisco Rodriguez was granted sick leave. As a result, his job on the new grinder in Department 333 was temporarily open, for the period of his sick leave.

32. The temporary opening referred to in paragraph 31 was filled through the job request system described in paragraph 12.

33. Plaintiff had not filed a written request for the open job referred to in paragraph 31.

34. The temporary job opening referred to in paragraph 31 was awarded to employee David Braglia, who was the most senior employee who had submitted a written request and was still interested in the job.

35. Braglia was not fully trained to operate the new grinder. Rather, he received only a few hours of training so that Defendant Harvester could continue production on the new grinder during Rodriguez' absence.

36. Shortly after being assigned to the new grinder, Braglia worked some premium time on the new grinder.

37. David Braglia is Caucasian.

38. On August 5, 1976, Plaintiff filed another grievance (hereinafter referred to as "grievance 1500"). In grievance 1500, Plaintiff asserted that Defendant Harvester had racially discriminated against Plaintiff. Specifically, Plaintiff asserted that in assigning Braglia to premium time duty, Defendant Harvester had conceded that Braglia was fully qualified to operate the new grinder, even though he had received only a few hours of training. Yet, according to Plaintiff, in denying grievance 1289, Defendant Harvester had taken the position that Plaintiff could not learn to operate the new grinder in three days. According to Plaintiff, these seemingly inconsistent positions by Defendant Harvester constituted racial discrimination.

39. Under the applicable collective bargaining agreement, an employee does not have to be fully qualified in order to be assigned premium time duty. Rather, to get premium time, an employee need only be qualified to perform the particular job that is to be performed during the premium time. In order to bump into a job classification during a RIF, however, an employee must be fully qualified to perform all jobs that are performed in that classification.

40. Defendant Harvester denied grievance 1500, on the grounds set forth in paragraph 39.

41. The Union pursued grievance 1500 through some of the steps of the contractual grievance procedure. At some point in late 1976 or early 1977, however, the Union ceased its pursuit of grievance 1500, and withdrew said grievance.

42. Defendant Harvester's initial denial of grievance 1500 was based upon legitimate considerations, and was not based upon Plaintiff's race or any other unlawful or discriminatory considerations.

43. Defendant Harvester had no role whatsoever in the Union's decision to withdraw grievance 1500.

44. Pursuant to the settlement of grievance 1289, Plaintiff was afforded a three day "break in" period on the new grinder on January 18, 19 and 20, 1977. Plaintiff's performance was then evaluated on January 21, 1977.

45. Based upon Plaintiff's performance on January 21, 1977, Defendant Harvester, through foreman Paul Erickson, determined that Plaintiff was not qualified to operate the new grinder, and thus disqualified Plaintiff from that job.

46. The disqualification referred to in paragraph 45 was the result of Plaintiff's inability to adequately perform the job, and was carried out pursuant to applicable provisions in the collective bargaining agreement.

47. Defendant Harvester's disqualification of Plaintiff referred to in paragraph 45 was not based upon Plaintiff's race, nor upon any other unlawful or discriminatory considerations.

48. Plaintiff did not file a grievance regarding his disqualification from the new grinder referred to in paragraph 45.

49. In January, 1977, Plaintiff was working in Department 191 (job classification C–235–9) at which time Defendant Harvester implemented a reduction in force in Department 191. As a result of that reduction in force, Plaintiff's then-present job in Department 191 (job classification C–235–9) was eliminated, and Plaintiff was reassigned to the job of stockman in Department 317 (job classification S–149–6). Plaintiff's reassignment was made pursuant to the provisions of the collective bar-

gaining agreement governing bumping during a RIF.

50. On or about February 2, 1977, Plaintiff instituted a third grievance (hereinafter referred to as "grievance 85"), in which Plaintiff asserted that the reassignment referred to in paragraph 49 was improper under the applicable provisions of the collective bargaining agreement. Specifically, Plaintiff asserted, as he had in grievance 1289, that he should have been reassigned to operate the new grinder in Department 333, rather than to Department 317.

51. Defendant Harvester denied grievance 85.

52. The Union pursued grievance 85 through some of the steps of the contractual grievance procedure, and eventually, the Union withdrew grievance 85.

53. Defendant Harvester's initial denial of grievance 85 was based upon legitimate considerations, and was not due to Plaintiff's race or any other unlawful or discriminatory considerations.

54. Defendant Harvester had no role whatsoever in the Union's decision to withdraw grievance 85.

55. During the period relevant to this lawsuit, employees Francisco Rodriguez, Hershell Bullard, and Robert Jones worked in Department 333, in job classification GX–25–B–9, and operated the new grinder. Rodriguez is Hispanic, and Jones and Bullard are Black. All three of these employees initially obtained said job classification through the posting and bidding procedures set forth in the applicable collective bargaining agreement, on the following dates: Rodriguez on February 3, 1976; Bullard on December 29, 1969; and Jones on November 25, 1974.

56. Having listened to the testimony of James Gats, and having had the opportunity to evaluate his demeanor on the witness stand during direct and cross examination, this Court finds that Mr. Gats testified in a forthright manner, and that his testimony was credible.

57. Having listened to the testimony of Paul Erickson, and having had the opportunity to evaluate his demeanor on the witness stand during direct and cross examination, this Court finds that Mr. Erickson testified in a forthright manner, and that his testimony was credible.

58. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## CONCLUSIONS OF LAW

On the above and foregoing findings of fact, the Court makes the following conclusions of law:

1. This Court has jurisdiction of the parties in this lawsuit.

2. This Court has jurisdiction of the § 1981 causes of action in this suit and said claims are not barred by the applicable statute of limitations.

3. Plaintiff has failed to sustain his burden of proving that Defendant Harvester has violated § 1981.

■ 4. Under § 1981, Plaintiff must prove by a preponderance of the evidence that Defendant intentionally and purposefully discriminated against Plaintiff because of his race. Section 1981 applies only to race discrimination, not to discrimination on the basis of color. Accordingly, Plaintiff's claims regarding discrimination on the basis of color are hereby dismissed.

■ 5. The seniority system maintained by Defendants in the applicable collective bargaining agreements is "bona fide" under § 1981.

6. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully failed to provide him with training for possible promotion on the basis of his race.

7. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully failed to transfer him to a job classification for which he was eligible on the basis of his race.

8. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully denied him equal opportunity with white employees to be promoted, transferred and to fill job openings on the basis of his race.

9. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully transferred him to a lower job grade on the basis of his race.

10. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully denied him his seniority rights under applicable collective bargaining agreements on the basis of race.

11. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully required him to qualify for the operation of the new grinder under more difficult circumstances than qualification periods for other employees on the basis of his race.

12. Plaintiff has failed to sustain his burden of proving that Defendant Harvester intentionally and purposefully denied him compensation which he would otherwise have earned, or required him to perform hard manual labor in order to retain his employment with Defendant Harvester, on the basis of his race.

13. Plaintiff has otherwise failed to establish that Defendants' acts were discriminatory or in violation of any state or federal law.

14. The law is with the Defendant, International Harvester Company, and against the Plaintiff, Edward L. Waller. This action, therefore, is dismissed with prejudice.

15. In this case, the Court does not award attorneys' fees to the prevailing Defendant. Each party is to bear its own costs.

16. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

IT IS SO ORDERED.