**Tracy L. WALKER, Plaintiff,**

v.

**SECRETARY OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**No. 1:87–CV–1789–CAM.**

United States District Court, N.D. Georgia, Atlanta Division.

May 11, 1989.

Tracy L. Walker, Union City, Ga., pro se.

Sylvia Lark Ingram, Office of U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

MOYE, Senior District Judge.

The above-styled action is before the court pursuant to Fed.R.Civ.P. 73(b) on the magistrate's report and recommendation. For the reasons stated below this court adopts in part and sets aside in part the magistrate's recommendation. In so doing this court DENIES in part and GRANTS in part the defendant's motion for summary judgment.

## FACTS

The plaintiff, Ms. Walker, was a permanent clerk typist in the Internal Revenue Service's Atlanta office. Ms. Walker is a light-skinned black person. Her supervisor was Ruby Lewis. Ms. Lewis is a dark-skinned black person. The employees in the office in which Ms. Walker and Ms. Lewis worked were predominantly black. In fact, following her termination, Ms. Walker was replaced by a black person. According to the record the working relationship between Ms. Walker and Ms. Lewis was strained from the very beginning—that is, since approximately November of 1985. Ms. Walker contends that Ms. Lewis singled her out for close scrutiny and reprimanded her for many things that were false or insubstantial. Ms. Walker's relationship with her former supervisor, Virginia Fite, was a cordial one. In fact, Ms. Walker received a favorable recommendation from Ms. Fite.

Ms. Walker met with Sidney Douglas, the EEO program manager for the Internal Revenue Service's Atlanta district about the problems she was having with Ms. Lewis. Two weeks later, pursuant to Ms. Lewis's recommendation, Ms. Walker was terminated. The reasons given for her termination were: 1) tardiness to work; 2) laziness; 3) incompetence; and 4) attitude problems. It is Ms. Walker's belief that the reasons were fabricated and were the result of Ms. Lewis's personal hostility towards Ms. Walker because of Ms. Walker's light skin.

Ms. Walker has not presented any direct evidence that Ms. Lewis was prejudiced

against light-colored skinned blacks. There is evidence that Ms. Lewis might have harbored resentful feelings towards white people, and therefore by inference, possibly towards light-skinned black people. Ms. Walker maintains that she was treated unfairly prior to her termination for no apparent reason. She would have the court infer that the unfair treatment was due to Ms. Lewis's prejudice of her light skin color.

Following her termination Ms. Walker filed this lawsuit pro se pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.;* and 42 U.S.C. § 1981 and § 1983. Walker alleges she was terminated because of invidious discrimination on the part of her supervisor Lewis, and that her termination constituted retaliation due to her complaining to the EEO. Due to the fact this is a Title VII action, the case was initially heard before a magistrate. The magistrate below recommended granting the defendant's summary judgment motion with respect to the claims under § 1981, § 1982, and the Administrative Procedure Act. The magistrate recommended granting the portion of the defendant's summary judgment motion that dealt with the Title VII invidious discrimination claim. The magistrate recommended denying the defendant's summary judgment motion with respect to the retaliation claim.

## LEGAL DISCUSSION

### A. The Title VII Discrimination Claim

■ The principal issue in this case is a somewhat novel one: does a light-skinned black person have a cause of action pursuant to Title VII against a dark-skinned black person for an alleged discriminatory termination of employment? The defendant offers two reasons that there should be no such cause of action. First, the defendant contends that "although Title

VII includes 'color' as one of the bases for prohibited discrimination, that term has generally been interpreted to mean the same thing as race" (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 8). Second, the defendant contends that there simply is no cause of action pursuant to Title VII available to a light-skinned black person against a dark-skinned black person.

### 1) Discrimination on the basis of color

Title VII is the exclusive remedy for federal employment discrimination lawsuits. *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Newbold v. United States Postal Service,* 614 F.2d 46 (5th Cir.1980). The historical predecessor to Title VII is the Civil Rights Act of 1866 and therefore 42 U.S.C. § 1981. In fact, in a suit such as this one, the legal elements and facts necessary to support a claim for relief under Title VII are identical to the facts which support a claim under § 1981. *Lincoln v. Board of Regents,* 697 F.2d 928 (11th Cir.1983); *Caldwell v. Martin Marietta Corporation,* 632 F.2d 1184, 1186 (5th Cir.1980).

The stated purpose of § 1981 is the "protection of citizens of the United States in their enjoyment of certain rights without discrimination on account of race, *color,* or previous condition of servitude." *United States v. Cruikshank,* 92 U.S. 542, 555, 23 L.Ed. 588 (1875) (emphasis added). In *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court, in an exhaustive study of the legislative history of § 1981, makes repeated references to the fact that the statute was originally enacted to apply to citizens of "every race and *color* ". 427 U.S. at 287 (emphasis added). In what is perhaps the most relevant case to this law suit, *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct 2022, 95 L.Ed.2d 582 (1987)[1], the Su-

---

1. In the defendant's Memorandum in Support of Motion for Summary Judgment the defendant twice cites to the Court of Appeals case *Al–Khazraji v. St. Francis College,* 784 F.2d 505 (3rd Cir.1986) (Defendant's Memorandum in

Support of Motion for Summary Judgment, pps. 8, 9). Nowhere in the record is it evident that the defendant is aware that the Supreme Court of the United States in *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95

preme Court stated in no uncertain terms that § 1981 "at a minimum reaches discrimination against an individual because he or she is genetically part of an ethnically and *physiognomically* distinctive sub-grouping of homosapiens". 107 S.Ct. at 2028 (emphasis added). In fact, the Supreme Court even goes further by stating that *it is not even essential to be physiognomically distinctive. see* 107 S.Ct. at 2028. Webster's Seventh New Collegiate Dictionary defines physiognomic as relating to physiognomy or *"external aspect"*.

Title VII was amended in 1972 to provide generally that "all personnel actions affecting employees ... shall be made free from any discrimination based on race, *color,* religion, sex or national origin". 42 U.S.C. § 2000e–16(a) (emphasis added). The Supreme Court has on at least two occasions stated that the purpose of Title VII is "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, *color,* religion, sex, or national origin". *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974) (emphasis added); *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

It has always been the policy of the Supreme Court that the plain meaning of legislation should be conclusive, except in the rare cases in which literal application of a statute will produce results demonstrably at odds with the intention of its drafters. *U.S. v. Ron Pair Enterprises,* —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Yet the defendant in the instant case contends in its brief that in Title VII cases the word "color" has "generally been interpreted to mean the same thing as race". (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 8). But the statutes and case law repeatedly and distinctly refer to *race and color.* This court is left with no choice but to conclude, when Congress and the Supreme Court refer to race and color in the same phrase, that "race" is to mean "race", and

"color" is to mean "color". To hold otherwise would mean that Congress and the Supreme Court have either mistakenly or purposefully overlooked an obvious redundancy.

The *Saint Francis* case has definitively spoken on the subject: "we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their *ancestry or ethnic characteristics.* Such discrimination is racial discrimination that Congress intended § 1981 to forbid, *whether or not it would be classified as racial in terms of modern scientific theory.* The Court of Appeals was thus quite right in holding that § 1981 'at a minimum,' reaches discrimination against an individual 'because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens'. It is clear from our holding, however, that a distinctive physiognomy *is not essential* to qualify for § 1981 protection." 107 S.Ct. at 2028 (emphasis added) (citations omitted).

A person's color is closely tied to his ancestry and could result in his being perceived as a "physiognomically distinctive sub-grouping of homo sapiens", which in turn could be the subject of discrimination. Notwithstanding that proposition, it is not even required that a victim of discrimination be of a distinctive physiognomical sub-grouping, a particularly relevant fact to the case at hand.

The one case that defendant cites as authority for the proposition that the term "color" in Title VII generally means "race" is *Felix v. Marquez,* 24 EPD ¶ 31,279 (D.D.C.1980). But that case lends itself to the opposite conclusion. As the court in *Felix* states: "color may be a rare claim, because color is usually mixed with or subordinated to claims of race discrimination, but considering the *mixture of races* and ancestral national origins in Puerto Rico, *color may be the most practical claim to present."* 24 EPD ¶ 31,279 (emphasis added). Discrimination against an individual because

L.Ed.2d 582 (1987), significantly expanded the

Court of Appeal's holding in the cited case.

such individual comes from a racially mixed heritage possibly is of particular relevance to the instant case.

Another case that states specifically that discrimination as to color as opposed to race can be the gravamen of a civil rights law suit is *Vigil v. City & County of Denver,* 15 EPD ¶ 6937 (D.Co.1977). As the court states in *Virgil:*

> The key factor in determining whether § 1981 should apply is whether a motivation for the discrimination was the victim's color. Plaintiff is a Mexican–American. Although skin color may vary significantly among those individuals who are considered Mexican–Americans, skin color may be a basis for discrimination against them. We note that skin color may vary significantly among individuals who are considered "blacks" or "whites"; both these groups are protected by § 1981, and *§ 1981 is properly asserted when discrimination on the basis of color is alleged* ... A particular act of discrimination against a Mexican–American may be motivated exclusively on the basis of the victim's national origin, rather than the victim's color. It may also be true that in certain areas of the United States, Mexican–Americans are subject to discrimination on the basis of national origin, and not on the basis of color. However, we find that, at least in this area, Mexican–Americans are subject to color-based discrimination, and are within the coverage of § 1981.

15 EPD ¶ 8000 (emphasis added). *but see Waller v. International Harvester,* 578 F.Supp. 309 (D.C.Ill.1984); *Brown v. EEOC,* Slip Op. No. 83 Civ. 2531, 1984 WL 1003 (S.D.N.Y. Oct. 11, 1984).

The few cases that might support the defendant's proposition are now obsolete in light of *Saint Francis College v. Al–Khazraji, supra.* In fact, at least one court has granted a rehearing because of *Saint Francis* and reversed its earlier decision. *Jatoi v. Hurst–Euless–Bedford Hospital Authority,* 819 F.2d 545 (5th Cir. 1987), *cert. denied,* ―― U.S. ――, 108 S.Ct.

709, 98 L.Ed.2d 660 (1988). Finally, in a case that predates *St. Francis,* the Supreme Court states that Title VII "was specifically designed to remove artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis or racial *or other impermissible classification".* *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

### 2) A suit by a light-colored black person against a dark-colored black person

The defendant also contends that it is simply not feasible or within the confines of § 1981 or Title VII to allow a law suit by a light-colored black person against a dark-colored black person. The court has already set out in detail above that in some situations the most practicable way to bring one's Title VII or § 1981 suit may be on the basis of color discrimination as opposed to race discrimination. To further illustrate why the instant action is appropriate under Title VII, it is once again necessary to refer to the *Saint Francis* case.

In *Saint Francis,* a United States citizen born in Iraq filed suit in Federal District Court against his former employer alleging that the employer had discriminated against him on the basis of his Arabian ancestry. The district court granted summary judgment for the defendant on the ground that Arabs are Caucasians and that a suit could not be brought under § 1981 by a caucasian against a caucasian. The case eventually found its way to the Supreme Court. In its analysis, the Supreme Court carefully considered the legislative history of § 1981. The court noted that Congress intended § 1981 to apply to all forms of discrimination including acts of discrimination against groups including Finns, gypsies, Basques, Hebrews, Swedes, Norwegians, Germans, Greeks, Finns, Italians, Spanish, Mongolians, Russians, Hungarians, Chinese, Irish and French. *id.,* 107 S.Ct. at *2026–2028.*[2] It would take an

---

2. The defendant cites *Sere v. Board of Trustees, University of Illinois,* 628 F.Supp. 1543 (N.D.Ill.

1986); *dismissed on other grounds,* 852 F.2d 285 (7th Cir.1988), in support of the proposition that

ethnocentric and naive world view to suggest that we can divide caucasians into many sub-groups but some how all blacks are part of the same sub-group. There are sharp and distinctive contrasts amongst native black African peoples (sub-Saharan) both in color and in physical characteristics.

As mentioned above, the Supreme Court has said that "a distinctive physiognomy is not essential to qualify for § 1981 protection". *Saint Francis College, et al. v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987); *see also Jatoi v. Hurst–Euless–Bedford Hospital Authority,* 819 F.2d 545 (5th Cir.1987). It therefore is not controlling that in the instant case a black person is suing a black person. In *Sere v. Board of Trustees, University of Illinois, supra,* the court noted that courts should not be placed in the "unsavory business of measuring skin color and determining whether the skin pigmentation of the parties is sufficiently different to form the basis of a lawsuit". 628 F.Supp. at 1546. This court recognizes full well that such difficulties are genuine and substantial. Nevertheless, the court must find that the issue is a question of fact that must be determined by the fact finder. This court holds, therefore, that the plaintiff in the instant case has stated a claim for relief that cannot be reached by summary judgment.

Thus the court sets aside that portion of the magistrate's recommendation that grants defendant's motion for summary judgment as to plaintiff's Title VII discrimination claim.

## B. The Title VII Retaliation Claim

■ This court adopts the Magistrate's recommendation to deny the defendant's summary judgment motion with respect to plaintiff's retaliation claim. In order to establish a *prima facie* case of retaliation, the plaintiff must establish that 1) there

was a statutorily protected participation; 2) an adverse employment action occurred; and 3) there was a causal link between the participation and the adverse employment action. *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987).

Defendant contends that the plaintiff did not engage in any protected activity until she saw an EEO counselor following her termination. According to the record it is clear that the plaintiff visited a Mr. Douglas prior to plaintiff's termination. Mr. Douglas was an EEO officer at the time. Defendant contends that the visit was on a personal level. However plaintiff denies this and contends she contacted Mr. Douglas specifically because he was an EEO officer. Making credibility choices between competing views of the evidence is inappropriate in summary judgment proceedings and this court refuses to make such a choice. *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930 (11th Cir.1987).

Defendant contends in its objections to the Magistrate's report that, even if a prima facie retaliation claim has been stated, it has sufficiently demonstrated that the decision to discharge plaintiff was based on a legitimate, nondiscriminatory reason. The plaintiff contends that the reasons for her termination were either fabricated or insubstantial. The issue of who is telling the truth is one that must be decided at trial and not at the summary judgment stage. The plaintiff has sufficiently demonstrated pursuant to Fed.R.Civ.P. 56(c) that there is a genuine issue of material fact.

Therefore this court adopts that portion of the magistrate's recommendation that denies defendant's motion for summary judgment as to plaintiff's retaliation claims.

a black person with dark pigmentation cannot sue a black person with lighter-skinned pigmentation. It is important to note that *Sere* predates the *Saint Francis* case. In *Sere* the plaintiff was a Nigerian black who was supervised by an American black with lighter skin color. The court stated that there was no cause of action

because discrimination on the basis of national origin (quoting *Anooya v. Hilton Hotels Corp.,* 733 F.2d 48 (7th Cir.1984)), and discrimination based on skin color amongst members of the same race, are not actionable claims. While the case is apposite, it is superseded by *St. Francis, supra.*

## C. 42 U.S.C. §§ 1981 and 1983 Claims

 In the employment context, § 1981 is not available to federal employees. The Supreme Court in *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), held that Title VII establishes the exclusive remedy for federal employment discrimination. *See also Newbold v. United States Postal Service*, 614 F.2d 46 (5th Cir.1980), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

Likewise 42 U.S.C. § 1983 only covers deprivations of rights under color of state law. The instant law suit involves federal officials acting under color of federal law rather than state law and are not, therefore, subject to an action under § 1983. *Broadway v. Block*, 694 F.2d 979 (5th Cir.1982).

Therefore, this court adopts that portion of the magistrate's recommendation that grants defendant's motion for summary judgment as to plaintiff's §§ 1981 and 1983 claims.

## D. The Administrative Procedure Act Claim

The APA does not create substantive rights on which a claim for relief can be based. *United States v. Testan*, 424 U.S. 392, 400–1, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Hill v. United States*, 571 F.2d 1098 (9th Cir.1978). Congress has provided in Title VII appropriate routes for judicial review of employment discrimination decisions. 42 U.S.C. § 2000e–16(d). *See Gardner v. State of Alabama*, 385 F.2d 804, 810 (5th Cir.1967), *cert. denied*, 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968).

Therefore, this court adopts that portion of the Magistrate's recommendation that grants defendant's motion for summary judgment with respect to plaintiff's Administrative Procedure Act claim.

## CONCLUSION

In sum, this court adopts that portion of the Magistrate's recommendation that GRANTED the defendant's motion for summary judgment with respect to plaintiff's § 1981 claim, plaintiff's § 1983 claim, and plaintiff's Administrative Procedure Act claim. This court also adopts that portion of the Magistrate's recommendation that DENIED the defendant's motion for summary judgment with respect to plaintiff's Title VII retaliation claim. This court sets aside that portion of the Magistrate's recommendation that GRANTED defendant's summary judgment motion with respect to plaintiff's Title VII discrimination claim.

Therefore, the court GRANTS defendant's summary judgment motion as to plaintiff's § 1983 claim, plaintiff's § 1981 claim, and plaintiff's Administrative Procedure Act claim, and DENIES defendant's summary judgment motion as to plaintiff's Title VII claims.

SO ORDERED.